1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RONALD DWANE BROOK,

11                  Plaintiff,                    No. CIV S- 04-1254 GEB GGH P

12          vs.

13   TOM L. CAREY, Warden, et al.,                ORDER &

14                  Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16   Introduction

17          Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Pending before the court are: 1) plaintiff's September 14, 2005, motion to compel

19   discovery to which defendants filed an opposition on November 18, 2005[1]; plaintiff's reply was

20   filed on December 2, 2005; 2) defendants' December 5, 2005, motion to dismiss which plaintiff

21   opposed on December 23, 2005; 3) plaintiff's motion for a protective order, filed on March 21,

22   2006, to stay his deposition and discovery responses, pending resolution of the first two motions

23   set forth above; 4) plaintiff's June 22, 2006, motion for appointment of counsel.

24   \\\\\

25   _____

26          [1] Defendants were granted a 45-day extension of time to file a response to the motion by
     an order filed on October 5, 2005.

1   Second Amended Complaint

2          To the extent that the second amended complaint, filed on July 20, 2005, upon

3   which this case proceeds, mirrors the allegations of the first amended complaint, this court will

4   borrow from its prior presentation of plaintiff's claims.[2]  To the extent that the allegations of the

5   second amended complaint differ, modifications are made.  Plaintiff proceeds against defendants

6   Warden Carey, Dr. Traquina, Dr. McIntyre, Dr. Cheung and Correctional Officer Cervantes.

7          On July 22, 2003, plaintiff submitted a medical request form to the dentist's

8   office, complaining of pain in his jaw, pain in his teeth near the site of an extraction, an inability

9   to eat or sleep properly, and expressing concern that the condition would become serious and

10  inoperable.  Second Amended Complaint (SAC), p. 2.  On August 5, 2003, plaintiff received

11  notice from the medical department that his name was being placed on a waiting list.  SAC, pp.

12  2-3 & Exhibit 2 (to SAC).  On October 15, 2003, plaintiff filed an administrative appeal with the

13  dentist's office complaining of delay in medical treatment.  Id., at 3.  On November 15, 2003,

14  plaintiff filed another medical request form with the dental office, reiterating his request of July

15  22, 2003.  Id.

16         On November 17, 2003, plaintiff filed another administrative appeal that

17  concerned the dental office for delay of medical treatment, which included a request to defendant

18  Cervantes that he assign a log number to the new appeal, plaintiff's original not having been

19  returned, and requesting that the new appeal be processed.  Id. & Exhibits 1 and 3.  Plaintiff

20  believes defendant Cervantes read the appeal and attached note and was aware that plaintiff was

21  claiming a serious medical need which might result in "irreparable damage."  Id.

22         On November 19, 2003, defendant Cervantes returned the 11/17/03 appeal to

23  plaintiff with instructions to send it for informal review directly to the dental clinic.  Id.  Plaintiff

24

25         [2] See Findings and Recommendations (at pp. 2-5), filed on February 2, 2005, in
    adjudicating plaintiff's June 30, 2004, motion for preliminary injunctive relief, which was denied
26  in the Order, adopting the Findings and Recommendations.  See Order, filed on March 28, 2005.

1 alleges that "when circumstances are such that regular appeal time limits may" pose a risk to an

2 inmate's safety "or cause other serious and irreparable harm, the appeal shall be processed at the

3 second level and completed within five days."  SAC, p. 4.  On November 20, 2003, plaintiff re-

4 submitted his appeal to the appeals coordinator, defendant Cervantes, reminding him that

5 plaintiff's earlier attempt for a response at the informal level from the dental clinic had failed,

6 asking again that the appeal be logged and processed properly, asserting that the appeal

7 concerned a serious medical condition which delay was making worse, and asking defendant

8 Cervantes not to prevent him from receiving treatment.  Id. & Exhibit 4.

9       On November 23, 2003, plaintiff received notice from the dental clinic that his

10 second request for dental care had been received and that his name was being placed on a waiting

11 list for dental treatment in chronological order.  Id. & Exhibit 2.  The following day plaintiff

12 filed a State Board of Control claim.  Id. & Exhibit 5.

13      On November 26, 2003, plaintiff's 11/17/03 appeal was once again returned to

14 him by defendant Cervantes with the following notation: "Try this, send 602 directly to medical

15 appeals analyst at primary clinic.  Your 602 will be tracked by medical appeals analyst"; plaintiff

16 did as he was instructed.  SAC, pp. 4-5 & Exhibit 6.  Plaintiff sent the appeal as instructed on

17 November 30, 2003.  Id., at 5 & Exhibit 7.

18      On December 7, 2003, plaintiff sought a copy of a memorandum setting forth the

19 wait times for medical care at CSP-Solano.[3]  Id.  Plaintiff obtained a memorandum of medical

20 care waiting periods, dated December 10, 2003, and signed by defendant CMO[4] Traquina.  Id., &

21 Exhibit 8.  On December 19, 2003, plaintiff's appeal was partially granted at the informal level

22 with the result that his name was placed on a waiting list and plaintiff was to be seen in

23 chronological order.  Id. & Exhibit 1.  That same day, plaintiff returned the appeal to the medical

24

25       [3] California State Prison-Solano in Vacaville.

26       [4] Chief Medical Officer.

1    appeals analyst for first level review, as defendant Cervantes had instructed that the appeal would

2    be tracked by the medical appeals analyst.  Id.  The appeal was returned on December 29, 2003,

3    with a screening form indicating that plaintiff needed to send it on to the regular inmate appeals

4    office for a log number, after which that office would forward the appeal to the medical appeals

5    analyst for first level review; plaintiff did as instructed that same day.  SAC, at 5-6 & Exhibit 9.

6           On January 3, 2004, the appeal was returned to plaintiff with a screening form

7    indicating that he had to wait seven days before submitting the appeal because he had already

8    submitted an appeal on December 29th. SAC, at 6 & Exhibit 10.  Plaintiff immediately returned

9    the appeal for processing and complained of the delay.  Id. & Exhibit 11.

10          On January 6th and 7th, 2004, plaintiff enlisted the help of non-defendant

11   Housing Officer Walker, to receive attention for his serious dental problem, and Officer Walker

12   apparently called the dental office on both days.  Id. & Exhibit 12.  On January 8, 2004, plaintiff

13   received notice that his 11/17/03 appeal had been given a log number, CSP-S-04-00040, and

14   would be processed at the first formal level in the medical department.  Id.

15          On February 3, 2004, not having received any response, plaintiff, threatening to

16   sue, again sought the assistance of Officer Walker, who called the dentist's office a third time, at

17   about 11:30 a.m..  SAC, at 7.  After the third call, Walker wrote plaintiff a pass for 12:30 p.m.

18   that same day to the dental clinic for triage.  Id. & Exhibit 13.  Plaintiff alleges that denial of

19   medical care until a lawsuit is threatened constitutes fraud.  Id.

20          Defendant Cheung interviewed and examined plaintiff, on February 3, 2004, and

21   stated that he was scheduling a dental appointment.  Id.

22          Thereafter, on February 6, 2004, plaintiff was escorted for a dental examination by

23   defendant Cheung, who "took a complete set of x-rays of plaintiff's teeth, including the hinge

24   area of the jaw," told plaintiff that his receding gum line was due to the many years' of tooth

25   brushing and the migration of his teeth on either side of a tooth extraction site; defendant said

26   there was no other dental problem.  Id., at 7-8.  Defendant Cheung conceded that a one-tooth

1   partial or bridge would solve plaintiff's problems with his teeth and jaw, but averred that the

2   state would not pay for a bridge.  Id., at 8.

3          Plaintiff explained that the hinge of his jaw was loose and his jaw muscles were

4   weak and that the pain in his jaw caused his fear that he was developing cancer or an otherwise

5   irreparable problem.  Id.  Defendant Cheung said he would put plaintiff's name on a waiting list

6   to see an oral surgeon with whom plaintiff should discuss his jaw problems.  Id.  Plaintiff asked

7   defendant Cheung to remove a sharp point in a tooth that kept cutting his tongue; defendant used

8   a power tool to smooth away the point.  Id.  Defendant Cheung ended the appointment with the

9   advice that rubbing toothpaste on his teeth with his fingers would dull plaintiff's pain.  Id.

10         Plaintiff was examined, on February 17, 2004, by an oral surgeon, Dr. Jennings,

11  not a defendant, who found plaintiff's teeth and gums to be in good condition with no obvious

12  problems, but diagnosed plaintiff as having TMJ[5] and prescribed an exercise to cure the problem,

13  telling plaintiff how to do the exercise(s) and when (each morning and evening for ten seconds).

14  Id., at 9.  When plaintiff asked, Dr. Jennings informed him that doing the prescribed exercises

15  would have prevented the TMJ.  Id.  Plaintiff alleges that denial of dental care can lead to loss of

16  teeth, loss of bone density, deformity, infection and even death.  Id. & Exhibit 14.

17         Defendant McIntyre, on March 5, 2004, partially granted plaintiff's

18  11/17/03 appeal at the first formal level, stating that plaintiff had been seen by a doctor.  Id. &

19  Exhibit 15.  On April 4, 2004, plaintiff submitted a medical request form for dental care.  SAC,

20  at 10.  On April 8, 2004, defendant Traquina granted the 11/17/03 appeal in full at the second

21  formal level, stating that plaintiff's medical problems were being treated.  Id. & Exhibit 16.

22         On April 25, 2004, plaintiff filed an appeal, requesting the dental care defendant

23  Traquina stated that plaintiff was, or was to be, receiving.  Id.  On May 10, 2004, plaintiff's

24  \\\\\

25

26         [5] Temporomandibular Joint Dysfunction.

1  appeal was returned, informing plaintiff that his name was not on the dental care waiting list.  Id.
2  & Exhibit 17.

3          On June 1, 2004, N. Grannis, Chief of Inmate Appeals (not a defendant), refused
4  to review the 11/17/03 appeal at the third or director's level, which is required by the State Board
5  of Control.  SAC, at 10 & Exhibit 18.[6]  On June 11, 2004, plaintiff received acknowledgment of
6  his complaint (about defendant Traquina and his alleged denial of dental care for plaintiff)
7  having been filed with the state medical board; on June 14, 2004, plaintiff was informed in a
8  notice from the medical board that his complaint did not come within the board's jurisdiction,
9  but that his complaint would be forwarded to Dept. of Corrections Health Care Servs. Div.  Id. &
10 Exhibits 19 and 20.

11         On July 1, 2004, plaintiff filed a CDC Form 7362 medical request seeking dental
12 care; on July 14, 2004, plaintiff received a "dental receipt" for the form.  SAC, at 11 & Exhibit
13 21.  On August 13, 2004,[7] plaintiff filed another request for dental care on a CDC Form 7362; on
14 the same day, he was informed that he was already on the waiting list.  Id. & Exhibit 22.

15         Plaintiff alleges that defendant Carey was aware of plaintiff's appeal and Board of
16 Control claim, thus knowing of his need for medical care and his difficulty in obtaining it, but
17 failed to act for plaintiff.  SAC, at 11.  Defendant Carey is, and has been, aware of the medical
18 department's unconstitutional policy of denying inmates medical care but fails to rectify it,
19 despite his power and legal duty to do so.  Id.  Defendant Carey's failure to prevent a policy of
20 denial or delay of medical care to plaintiff constituted deliberate indifference to plaintiff's serious
21 medical condition in violation of the Eighth Amendment and his due process rights under the
22 Fourteenth Amendment; in failing to ameliorate the policy, Carey has ratified the conduct of the
23 other defendants.  SAC, at 11-12.  Defendant Carey's failure to prevent the unconstitutional

24 _____

25         [6] Plaintiff's exhibit indicates that the appeal was returned because it had been granted by
   the institution and there was nothing to be reviewed.

26         [7] The form itself indicates that the request was made on August 3, 2004.

medical care policy amounted to negligence under state law and violated plaintiff's rights under the state constitution. SAC, at 12. Defendant Carey knew his failure to prevent the policy of denied or delayed medical care violated plaintiff's state and federal rights and state and federal laws. SAC, at 12 & Exhibits 23 and 24.[8] Plaintiff also alleges that defendant Carey has direct supervisory responsibility over the other defendants and that he ratified their conduct. SAC, at 12.

Plaintiff alleges that all defendants delayed or denied medical care to prisoners. Id. Plaintiff alleges that defendant Cervantes violated state and federal laws by, in essence, practicing medicine without a license, misdirecting appeals and using his own judgment to assess the seriousness of plaintiff's medical condition. SAC, at 13. Defendants Traquina, McIntyre, Cheung and Cervantes were deliberately indifferent to plaintiff's serious medical condition in violation of the Eighth Amendment and of his due process rights under the Fourteenth Amendment, as well as state law, and were aware of violating plaintiff's rights. Id. Defendants violated plaintiff's rights under the state constitution, and were negligent under state law; defendants knew that the unconstitutional policy of delayed or denied medical care caused pain and suffering to plaintiff. SAC, at 14. Defendants knew or should have known that their denied or delayed medical care could lead to irreparable physical damage to plaintiff; defendants disregarded a substantial risk of serious harm to plaintiff. Id. Defendants relied on untrained staff to determine the seriousness of plaintiff's condition. Id. Defendants' delay in processing his medical appeals denied his needed medical care. Id., at 14-15. Defendants also retaliated against him by denying medical care because he filed an appeal against dental staff. SAC, at 16. Defendants' actions and omissions were tantamount to intimidation and coercion in violation of Cal. Civil Code § 52.1. Id. Defendants' delay in processing his appeals violated his First

---

[8] These two incomplete documents, which appear to be the partial declarations of two inmates, other than plaintiff, complaining of the dental care, or lack thereof, they received at CSP- Solano, must be disregarded/stricken because they are partial, unsigned and lack any foundation or authentication.

1  Amendment right of access to the courts and his due process rights.  Id.  Defendant fears further

2  retaliation from the filing of this lawsuit.  SAC, at 17.

3          Defendant alleges that defendant Cervantes committed fraud when he

4  intentionally made the false statement, on which he intended for plaintiff to rely, and on which

5  plaintiff justifiably relied to his detriment (delay in medical care), that the medical appeals

6  analyst would track the 11/17/03 appeal.  Id.  Defendant Cheung committed fraud when he

7  intentionally made the false statement that plaintiff could not have a one-tooth partial because the

8  state would not pay for it, a statement upon which plaintiff justifiably relied to his injury in the

9  form of denied dental care.  SAC, at 17-18.  Defendant McIntyre committed fraud when she

10  made an intentionally false statement that plaintiff had been given a full opportunity to explain

11  his appeal issues, stating the plaintiff's dental concerns had been addressed thoroughly on

12  February 17, 2004.  SAC, at 18.  Plaintiff justifiably relied on the statement, as defendant

13  McIntyre intended, to his detriment in the form of denied dental care.  Id.  Defendant Traquina

14  committed fraud by stating that plaintiff was being treated by the oral surgeons and would be re-

15  evaluated at given intervals, on which this defendant intended that plaintiff would rely and not

16  pursue further dental treatment.  Id.  Plaintiff did justifiably so rely and was harmed by being

17  denied medical care.  Id.  Defendant Traquina also committed fraud by stating that the 11/17/03,

18  appeal was granted in full, intending that plaintiff would rely on the statement and not pursue

19  further medical care, which plaintiff justifiably did, suffering harm from the delay/denial of

20  medical care.  Id.  Each defendant conspired to deprive plaintiff of his constitutional rights in

21  violation of 42 U.S.C.§ 1985.  Plaintiff seeks declaratory and injunctive relief as well as money

22  damages.  SAC, at 19-21.

23  Motion to Dismiss

24          Defendants move to dismiss certain of plaintiff's claims, under Fed. R. Civ. P.

25  12(b)(6), for failure to state a cognizable claim against any defendant for fraud and conspiracy,

26  and for failure to state any claim as to defendant Carey, and, under non-enumerated Fed. Rule of

1    Procedure 12(b), for failure to exhaust administrative remedies as to plaintiff's fraud and

2    conspiracy allegations against defendants.  Motion to Dismiss (MTD), pp. 1, 3-11.  Specifically

3    as to defendant Carey, defendants move for the dismissal of defendant Carey on the ground that

4    there is no vicarious liability under § 1983, contending that plaintiff has failed to allege a causal

5    connection between defendant Carey and plaintiff's injuries.  Id., at 1-3.  Defendants also allege,

6    in one section of the motion, that defendant Carey is "entitled to summary judgment" (p. 11) on

7    the same ground. MTD, pp. 11-14.  The court will construe the inapposite reference to summary

8    judgment as inadvertent, since, inter alia, this motion was noticed as a motion to dismiss,

9    pursuant to Fed. R. Civ. 12(b)(6) and non-enumerated Fed. Civ. R. P. 12(b), and not as a motion

10   for summary judgment, pursuant to Fed. R. Civ. P. 56.

11             _Legal Standard for Motion to Dismiss for Failure to State a Claim_

12             A complaint should not be dismissed under Rule 12(b)(6) unless it appears

13   beyond doubt that plaintiff cannot prove any set of facts consistent with his allegations which

14   would entitle him to relief.  NOW, Inc. v. Schiedler, 510 U.S. 249, 256, 114 S. Ct. 798, 803

15   (1994); Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing Conley

16   v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957),  Cervantes v. City of San Diego, 5 F.3d

17   1273, 1274-75 (9th Cir. 1993).  Dismissal of the complaint, or any claim within it, "can be based

18   on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

19   cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990);

20   see also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

21             In considering a motion to dismiss, the court must accept as true the allegations of

22   the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

23   Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

24   motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

25   89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869 (1969).  The court will "'presume that general

26   allegations embrace those specific facts that are necessary to support the claim.'"  NOW, 510

1  U.S. at 256; 114 S. Ct. at 803, quoting Lujan v. Defenders of Wildlife, 504 U.S.555, 561, 112 S.

2  Ct. 2130, 2137 (1992).  Moreover, pro se pleadings are held to a less stringent standard than

3  those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).  A

4  motion to dismiss for failure to state a claim should not be granted unless it appears beyond

5  doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to

6  relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing

7  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); see also Palmer v. Roosevelt

8  Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

9           The court may consider facts established by exhibits attached to the complaint.

10  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may disregard

11  allegations in the complaint if they are contradicted by facts established by exhibits attached to

12  the complaint.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

13  Furthermore, the court is not required to accept as true allegations that contradict facts which

14  may be judicially noticed.  Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir.

15  1987), cert. denied, 486 U.S. 1040 (1988).  The court need not accept as true conclusory

16  allegations, unreasonable inferences, or unwarranted deductions of fact.  Western Mining

17  Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).  The court

18  need not accept legal conclusions "cast in the form of factual allegations."  Western Mining

19  Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

20           A pro se litigant is entitled to notice of the deficiencies in the complaint and an

21  opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

22  Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

23  \\\\\

24  \\\\\

25  \\\\\

26  \\\\\

1    *Discussion*

2        Fraud

3        As to plaintiff's claims of fraud, defendants contend that, under Fed. R. Civ. P.

4    9(b), allegations of fraud must be specifically pleaded.[9]  MTD, p. 5.  They correctly observe that

5    "[c]laims of fraud or mistake should include 1) the time, place and content of fraud; 2) intent to

6    deceive (scienter); and 3) facts showing falsity."  MTD, p. 5, citing Wood v. Apodaca, 375 F.

7    Supp.2d 942, 949 (N.D. Cal. 2005).  A plaintiff must explain why a statement is false or

8    misleading; furthermore, "a statement or omission must be shown to have been false or

9    misleading *when made*."  In re Stac Electronics Securities Litigation, 89 F.3d 1399, 1404 (9th Cir.

10   1996) [emphasis in original].

11       Plaintiff has alleged defendant Cervantes committed fraud with the following

12   notation in his November 26, 2003 appeal response: "Try this, send 602 directly to medical

13   appeals analyst at primary clinic.  Your 602 will be tracked by medical appeals analyst."  SAC,

14   pp. 4-5 & Exhibit 6.  Plaintiff sent the appeal as instructed on November 30, 2003.  Id., at 5 &

15   Exhibit 7.  On December 19, 2003, plaintiff's appeal was partially granted at the informal level

16   with the result that his name was placed on a waiting list and plaintiff was to be seen in

17   chronological order.  Id. & Exhibit 1.  That same day, plaintiff returned the appeal to the medical

18   appeals analyst for first level review, as defendant Cervantes had instructed that the appeal would

19   be tracked by the medical appeals analyst.  Id.  When plaintiff returned the appeal to the medical

20   appeals analyst for first level review, as instructed by defendant Cervantes, it was returned on

21   December 29, 2003, with a screening form indicating that plaintiff needed to send it on to the

22   regular inmate appeals office for a log number, after which that office would forward the appeal

23   to the medical appeals analyst for first level review.

24   \\\\\

25   _____

26       [9] "In all averments of fraud or mistake, the circumstances constituting fraud or mistake
     shall be stated with particularity."  Fed. R. Civ. P. 9(b), in relevant part.

1    As defendants note, plaintiff conceded that his appeal was initially partially

2 granted by the medical appeals analyst (to whom plaintiff submitted the appeal immediately upon

3 its return from defendant Cervantes, following his instructions).  MTD, p. 6.  In his opposition,

4 plaintiff references the relevant paragraphs of his second amended complaint, but does not

5 provide a sufficient basis for his allegations of fraud in this context.  Opp., p. 12.  Primarily, he

6 contends the allegations of fraud are part of the retaliation to which he was subjected for

7 exercising his right to appeal his grievances through the administrative appeal process.  Id.

8 Defendants are correct that plaintiff has failed to meet his burden under Fed. R. Civ. P. 9(b), with

9 respect to his specific allegation that defendant Cervantes committed fraud by suggesting or

10 advising plaintiff that the medical appeals analyst would track his 602 appeal.

11    As to his allegations that defendant Cheung committed fraud when he made the

12 "false" statement that plaintiff could not have a one-tooth partial because the state would not pay

13 for it (SAC, at 17-18), as defendants point out, plaintiff does not set forth facts demonstrating

14 how such a statement was fraudulent.  As defendants assert, plaintiff offers no assertion that the

15 state *would* pay for a one-tooth partial bridge.  MTD, p. 6.

16    Defendants request that the court take judicial notice of the Department of

17 Operations Manual (DOM) § 54050.18.1,[10] which this court does, pursuant to Fed. R. Evid. 201.

18 MTD, p. 6, n. 1.  To the extent that plaintiff may have sought a permanent or fixed partial bridge,

19

---

20    [10] Defendants state that they have attached a copy of the DOM section at issue but the
court could not locate that particular section among defendants' attachments.  In addition,
21 defendants cited § 52050.18.1, obviously an error, as well as the correct section, 54050.18.1.
The court was able to access the DOM on-line on the CDCR website and sets forth the section
22 herein in its entirety: "54050.18.1 **Removable Dental Prostheses**
Limited dental prosthetic services shall be provided when facilities are available and approved by
23 the CD or delegated subordinate.  Limited prosthetics shall consist of: • Providing economical
appliances necessary for improved mastication.  • Replacing missing anterior teeth.
24 Acrylic, removable partial dental prosthesis is the appliance of choice when the remaining teeth
are sound and: • Anterior teeth are to be replaced.  • The patient does not have at least eight
25 functioning posterior teeth.  Appliance with cast metal framework may be used in those cases
where the acrylic appliance will not suffice.  A complete denture shall be the appliance of choice
26 when the prognosis for a partial denture is dubious."

1    the DOM at § 54050.18 states: "Dentists shall not attempt to provide case or laboratory

2    processed crowns or fixed prosthetics except in those very rare instances where no other

3    treatment is suitable."  Plaintiff asserts neither in his second amended complaint nor in his

4    opposition the basis for his belief that the statement by defendant Cheung was false.  Moreover,

5    he does not claim to have had any missing anterior (front) tooth so that on the face of it, with

6    respect to DOM 54050.18.1, defendant Cheung's assertion may well have been correct in the

7    dental condition that plaintiff presented, or, at worst, not a comprehensive response.  In any

8    event, plaintiff does not make out an allegation of fraud on these facts, nor does he ameliorate

9    and sufficiently support it in his opposition.

10                   Plaintiff alleges that defendant McIntyre "committed fraud when she

11   intentionally made the false statement that the plaintiff had been given the opportunity to fully

12   explain his appeal issues, and that the plaintiff's dental concerns were being thoroughly

13   addressed on February 17, 2004."  SAC, at 18.  Plaintiff justifiably relied on the statement, as

14   defendant McIntyre intended, to his detriment in the form of denied dental care.  Id.  Earlier in

15   the allegations, plaintiff claims that, on March 5, 2004, defendant McIntyre partially granted

16   plaintiff's 11/17/03 appeal at the first formal level, stating that plaintiff had been seen by a

17   doctor.  SAC, at 9 & Exhibit 15.  Although defendants aver that it is unclear where or when the

18   statement at issue took place or how or why it could be characterized as false or fraudulent (opp.,

19   p. 7), the March 5, 2004 appeal response by defendant McIntyre contains, inter alia, the following

20   findings: "On February 17, 2004, you were interviewed by J. Jennings, D.D.S., Oral Surgeon.  At

21   that time, you were provided with an opportunity to fully explain your appeal issues... Results of

22   this inquiry reveal that during the aforementioned interview, your dental concerns were

23   thoroughly addressed."  Exhibit 15 to SAC; p. 8 of Exh. 1 to defendant Cervantes' declaration.

24   Thus, although plaintiff's allegations are not as clear as they could be, the court logically infers

25   that he is referring to the part of the statement contained in the March 5, 2004 appeal response as

26   fraudulent.

1    At the time of the partial grant at the first formal level, on March 5, 2004, plaintiff

2  had been triaged (Feb. 3, 2004) and examined by defendant Dr. Cheung (Feb. 6, 2004), and had

3  been seen by the oral surgeon, Dr. Jennings (not a defendant) on Feb. 17, 2004.  SAC, at 7-9;

4  Opp., p. 7.  Defendant Cheung had x-rayed his teeth and jaw area and had filed down a sharp

5  tooth on Feb. 6, 2004; Dr. Jennings had examined his jaw, diagnosed his condition and

6  prescribed a jaw exercise on Feb. 17, 2004.  As defendants contend, that plaintiff may dispute

7  whether or not his dental concerns had been addressed at the time of his examination, does not

8  mean that defendant McIntyre's statement to that effect was either intentionally or

9  unintentionally untrue.

10    Defendants also argue that plaintiff's statement that he relied on defendant

11  McIntyre's (March 5, 2004) representations, as part of his claim of fraud, is belied by his

12  submission, on April 4, 2004, of a medical request form for dental care.  Opp., p. 7; SAC, at 10.

13  On April 8, 2004, defendant Traquina granted the 11/17/03 appeal in full at the second formal

14  level, stating that plaintiff's medical problems were being treated.  SAC, at 10 & Exhibit 16.

15  Moreover, the court observes, it is evident in the April 8, 2004, second level response by

16  defendant Traquina to the 11/17/03 appeal, granting the appeal in full, as plaintiff asserts, that

17  plaintiff had appealed the first level response, a fairly clear indication of plaintiff's not having

18  relied on the first level response.  In any event, plaintiff does not adequately make out a claim of

19  fraud against defendant McIntyre so as to be able to proceed on such a claim, nor does his

20  opposition enhance any such allegation.

21    As to defendant Traquina, plaintiff has alleged that he committed fraud by stating

22  that plaintiff was being treated by the oral surgeons and would be re-evaluated at given intervals,

23  on his April 8, 2004, second formal level response, to plaintiff's 11/17/03 appeal.  SAC, at 9, 18

24  & Exhibit 16.  Defendant Traquina also committed fraud by stating that the 11/17/03, appeal was

25  granted in full, intending that plaintiff would rely on the statement and not pursue further medical

26  care, which plaintiff justifiably did, suffering harm from the delay/denial of medical care.  SAC,

14

at 18.  Plaintiff alleges that Traquina intended that plaintiff would rely on this response and not pursue further dental treatment, which plaintiff did justifiably to his harm.  Id.

On April 25, 2004, plaintiff filed an appeal, requesting the dental care defendant Traquina stated that plaintiff was, or was to be, receiving.  Id.  On May 10, 2004, plaintiff's appeal was returned, informing plaintiff that his name was not on the dental care waiting list.  Id. & Exhibit 17.

Again, as defendants note, plaintiff has set forth facts insufficient for a claim of fraud.  Opp., pp. 7-8.  When Traquina made the statements in the April 8, 2004 appeal response, plaintiff had been seen by defendant Dr. Cheung and by the oral surgeon Dr. Jennings (in February, 2004).  Plaintiff sets forth insufficient facts that indicate that the statement was demonstrably false when it was made; the fact that plaintiff's name was not on the dental care waiting list when plaintiff sought further medical attention two and half weeks following the response might support a claim of inadequate medical care, but does not rise to the level of showing fraud on the part of defendant Traquina.  Defendants also argue that plaintiff's claim of having relied on the response as an assurance that he would be re-evaluated on an on-going basis by an oral surgeon is belied by the plaintiff having sought further medical care a couple of weeks thereafter.

As defendants further contend, plaintiff's identified dental problems had been addressed.  Opp., p. 8.  He complained of a sharp tooth, which had been pared down.  Plaintiff had been informed that his receding gum line came from years of tooth brushing and migration of the surrounding teeth around an extraction cite.  He had been diagnosed with TMJ and been provided an exercise for the condition.  Although plaintiff was quite apparently not satisfied with the treatment he received with respect to his TMJ and apparently wanted a one-tooth bridge, he has not shown how the dental condition(s) of which he complains were made worse by any of the allegedly fraudulent statements made by defendants.  Plaintiff's claims of fraud cannot be conflated with any claims of retaliation by the defendants in the form of denied or delayed dental

15

1  care for plaintiff's having filed appeal grievances, as there is a heightened pleading standard for

2  claims of fraud under Fed. R. Civ. 9(b).  Plaintiff's fraud claims should be dismissed.

3                      <u>Conspiracy</u>

4          As to his claims of conspiracy, plaintiff must make some showing of an

5  agreement or a meeting of the minds on the part of defendants to violate his constitutional rights.

6  <u>Woodrum v. Woodward County</u>, 866 F.2d 1121, 1126 (9th Cir. 1989), citing <u>Fonda v. Gray</u>, 707

7  F.2d 435 (9th Cir. 1983).  Conspiracy allegations must be supported by material facts and not be

8  merely conclusory statements.  <u>Lockary v. Kayfetz</u>, 587 F. Supp. 631 (N. D. Cal. 1984).

9          Defendants are correct in their contention that a claim of conspiracy under § 1983

10  must set forth specific facts that support the existence of the claimed conspiracy.  Opp., p. 9,

11  citing <u>Burns v. County of King</u>, 883 F.2d 819, 821 (9th Cir. 1989).   To the extent that he claims

12  that defendants engaged in a conspiracy to deprive him of needed dental care, plaintiff does not

13  show the requisite factual specificity to support such a claim.  <u>Sanchez v. City of Santa Ana</u>, 936

14  F.2d 1027, 1039 (9th Cir. 1990), citing <u>Karim-Panahi v. Los Angeles Police Dept</u>., 839 F.2d 621,

15  626 (9th Cir. 1988).  Vague and conclusory allegations are not sufficient to support a claim for

16  civil rights violations based on conspiracy.  <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir.

17  1982); <u>see</u> <u>also</u> <u>Pena v. Gardner</u>, 976 F.2d 469, 471 (9th Cir. 1992).

18          Nor does plaintiff make out any claim of conspiracy under 42 U.S.C. § 1985,

19  where there is no indication in the allegations that plaintiff was discriminated against because he

20  is a member of a particular race or suspect class.  <u>Burns v. County of King</u>, 883 F.2d at 821.

21  Defendants contend that plaintiff's claim that defendants conspired to enforce an unconstitutional

22  policy does not explain what the overall policy was.  Opp., p. 9.  However, it is fairly evident that

23  the allegedly unconstitutional policy plaintiff seeks to implicate throughout his complaint is one

24  whereby an inmate at CSP-Solano, in particular, he, is deprived of adequate medical care for

25  what he alleges is a serious medical condition due to defendants' denials of requests for dental

26  care or delays of such treatment (and in retaliation for the filing of grievances re: dental care).

1    But plaintiff must state facts, to state a claim of conspiracy, that show an agreement or a meeting

2    of the minds on the part of defendants to violate his constitutional rights, and this he has failed to

3    do; nor has he enhanced these allegations in his opposition.  Woodrum v. Woodward County,

4    866 F.2d at 1126 (9th Cir. 1989), citing Fonda v. Gray, 707 F.2d 435 (9th Cir. 1983).  Plaintiff's

5    claims of conspiracy, pursuant to 42 U.S.C. § 1983, should be dismissed.

6           Liberality in granting a plaintiff leave to amend "is subject to the qualification that

7    the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not

8    futile."  Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789, 799 (9th Cir. 2001), quoting

9    Bowles v. Reade, 198 F.3d 752, 757 (9th Cir.1999).  In this case, the court can discern no manner

10   in which plaintiff might be able to cure the defects of his fraud and conspiracy allegations and

11   will recommend dismissal of all such claims without leave to amend.  Because the court will

12   recommend dismissal on that ground, the court need not reach defendants' contention that

13   plaintiff's claims of fraud and conspiracy have not been administratively exhausted.

14          In addition, and for the same reason, any claim that plaintiff has purported to bring

15   pursuant to § 1985 should be dismissed without leave to amend.

16          Moreover, the court finds that any claim plaintiff purports to make under Cal. Civ.

17   Code § 52.1 should be dismissed.  Cal. Civ. Code § 52.1 requires "an attempted or completed act

18   of interference with a legal right, accompanied by a form of coercion."  City and County of San

19   Francisco v. Ballard, 136 Cal. App.4th, 39 Cal. Rptr. 3d 1 (2006) [citations omitted] (dismissal

20   of claim without leave to amend was proper).  Plaintiff must allege conduct that rises to the level

21   of a threat of violence.  Id.  Plaintiff has failed completely to satisfy the state civil statute's

22   requirement of a showing of a threat or coercion on the part of defendants, even assuming he has

23   sufficiently alleged that a legal right had been interfered with by defendants.   This claim should

24   be dismissed without leave to amend.

25   \\\\\

26   \\\\\

17

Defendant Carey

Defendants are correct that plaintiff has failed to show any personal involvement by defendant Carey in the deprivations of his constitutional rights that plaintiff alleges.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).   As noted, supra, vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d at 268 (9th Cir. 1982).   Plaintiff's claim for money damages against defendant Carey in his individual capacity should be dismissed.

\\\\\

\\\\\

\\\\\

1    However, plaintiff also seeks prospective injunctive relief.  Just as it is not

2    necessary to allege Monell[11] policy grounds when suing a state or municipal official in his or her

3    official capacity for injunctive relief related to a procedure of a state entity, Chaloux v. Killeen,

4    886 F.2d 247 (9th Cir. 1989), it follows that it is not necessary to allege the personal involvement

5    of a state official when plaintiffs are attacking a state procedure on federal grounds that relates in

6    some way to the job duties of the named defendant.  All that is required is that the complaint

7    name an official who could appropriately respond to a court order on injunctive relief should one

8    ever be issued.  Harrington v. Grayson, 764 F. Supp. 464, 475-477 (E.D.Mich. 1991); Malik v.

9    Tanner, 697 F. Supp. 1294, 1304 (S.D.N.Y. 1988).  ("Furthermore, a claim for injunctive relief,

10   as opposed to monetary relief, may be made on a theory of respondeat superior in a § 1983

11   action."); Fox Valley Reproductive Health Care v. Arft, 454 F. Supp. 784, 786 (E.D. Wis. 1978).

12   See also, Hoptowit v. Spellman, 753 F.2d 779 (9th Cir. 1985), permitting an injunctive relief suit

13   to continue against an official's successors despite objection that the successors had not

14   personally engaged in the same practice that had led to the suit.  However, because a suit against

15   an official in his or her official capacity is a suit against the state, policy or procedure of the state

16   must be at issue in a claim for official capacity injunctive relief.  Haber v. Melo, 502 U.S. 21, 25,

17   112 S. Ct. 358, 361-62 (1991).  In this case, the court finds that plaintiff has alleged that the

18   defendants have implemented an unconstitutional policy at CSP-Solano with respect to

19   effectuating dental care.  Warden Carey is a proper defendant in his official capacity only.

20   Plaintiff's claim for money damages against defendant Carey should be dismissed; however,

21   defendants' motion should be denied as to defendant Carey in his official capacity.

22   Plaintiff's Motion to Compel

23   Plaintiff has moved, pursuant to Federal  Rules of Civil Procedure 34(b) and

24   37(a), for an order compelling production, and/or further production, of his first and second

25

26   [11] Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).

19

1  requests for production of documents, on February 6, 2005, and on July 14, 2005; he also moves

2  that the defendants be compelled to admit or deny documents submitted to defendants on March

3  16, 2005.  Motion to Compel (MTC) at 1 & plaintiff's attached declaration.  Such responses as

4  have been forthcoming are evasive and incomplete and have contained, plaintiff avers, meritless

5  objections on the grounds that the requests are vague, ambiguous, overbroad, seek privileged

6  material, irrelevant and not calculated to lead to the discovery of admissible evidence, and are

7  available through plaintiff's medical or central file or the law library.  MTC, plaintiff's decl., p.

8  6.

9           Although the parties have corresponded in an apparent effort to resolve their

10  differences in this matter, <u>see</u> Exhibits to MTC; Exhs. to Reply, they have evidently not been

11  successful.

12      *First Set of Production Requests*

13           At issue in plaintiff's first set of requests for production of documents are: nos. 1,

14  3, 5, 6, 7, 8, 9, 10, 15, 16, 17, 18, 19, 20.[12]

15           Request No. 1: Any and all grievances, complaints, or other
    documents received by the defendants or their agents at CSP-
16           Solano concerning mistreatment of inmates by defendants
    Traquina, McIntyre, Cheung, or Cervantes, and any memoranda,
17           investigative files, or other documents created in response to any
    such documents, since January 1, 2003.

18
             Response: Defendants object to this request on the grounds that it
19           is vague, overbroad, and is not relevant nor calculated to lead to the
    discovery of admissible evidence.  Defendant[] objects to this
20           document request to the extent that it calls for information that is
    protected by the official information and Exemption to the
21           Freedom of Information Act privileges.  Defendants object to this
    request to the extent that it calls for confidential information
22           protected by the privacy rights of staff and inmates guaranteed by
    the United States Constitution, the California Constitution, and
23           applicable state statutes, such as Penal Code sections 832.7 and
    6126.3.  Finally, Defendants object to this request to the extent that
24           it calls for confidential information that would jeopardize the

25  ─────────────────

26      [12] These requests are not plainly identified in plaintiff's motion, but are identified both
    defendants' opposition and plaintiff's reply thereto.

1    safety and security of the institution, staff and inmates.

2    The scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad.  Discovery may be

3    obtained as to any unprivileged matter "relevant to the claim or defense of any party...."  Id.

4    Discovery may be sought of relevant information not admissible at trial "if the discovery appears

5    reasonably calculated to lead to the discovery of admissible evidence."  Id.  The court, however,

6    may limit discovery if it "....is unreasonably cumulative or duplicative," or can be obtained from

7    another source "that is more convenient, less burdensome, or less expensive"; or if the party who

8    seeks discovery "has had ample opportunity by discovery ...to obtain the information sought"; or

9    if the proposed discovery is overly burdensome.  Fed. R. Civ. P. 26(b)(2)(i)(ii) and (iii).

10   The court need not assess the propriety of the several privileges asserted because

11   the court finds that the probative value of the requests is greatly outweighed by the burden to

12   seek and produce the requested documentation.  Plaintiff attacks a policy, which on its face,

13   greatly discourages CDCR dentists from performing bridge work.  There is no need to present

14   evidence that in practice as well, CDCR will not perform the requested bridge work.  In terms of

15   plaintiff's allegations of delay, plaintiff's facts speak for themselves and would not be greatly

16   aided, if at all, by attempting to produce evidence at trial that other inmates also suffered delay

17   which would have to be assessed in light of their individual facts and circumstances.  Holding

18   several trials within a trial is seldom efficacious.  Moreover, in practical terms, someone in the

19   dental department where plaintiff resides would have to take the time to acquire and produce

20   documents which have every potential to be voluminous – all for the very slim value, and

21   probable lack of any value, these documents may have to plaintiff's case.  The court will not task

22   CDCR with mindless duties which would have a present detrimental effect on the provision of

23   medical/dental services.

24   Plaintiff's request is denied.

25   Request No. 3: All sick call request sheets (CDC form 7263)
     submitted by the plaintiff form [sic] the period January 1, 1998 to
26   the date of your response.

1               <u>Response</u>: The request is objected to on the grounds that Plaintiff's
medical file is equally available to plaintiff for inspection and
2              copying pursuant to prison policies and procedures.

3              Plaintiff contends that he has never been able to locate any CDC form 7263 sick

4 call requests in his medical file.   Defendants concede that "in the past" that "it was not prison

5 custom"  to keep such forms beyond the day they were used because the form was basically

6 intended to reserve a medical or dental appointment; following any such appointment, any

7 information related to it would be recorded in the inmate's medical file.  Opposition (Opp.), p. 4.

8 Current policy provides that the 7263 medical request forms, according to defendants, be placed

9 in an inmate's medical file, including dental care requests.  <u>Id</u>.  Therefore, defendants aver, the

10 forms would be available for him to see in his own medical file.

11              Plaintiff, however, counters that he does not have adequate access to his medical

12 files, which span thirty years, by being limited to one 15-minute period every three months.

13 Reply, p. 1.  In any event, he asserts that he was unable to find any such medical form request in

14 his October 7, 2005 review of his medical files.  <u>Id</u>., at 6.  Plaintiff seeks copies of his request for

15 dental care forms to demonstrate how often he requested such dental care.

16              The court finds that defendants' unsupported assertions are too vague that the past

17 practice of discarding medical request forms has ended.  They do not provide plaintiff or the

18 court with any specific date as to when this practice ended.  Defendants must specify the date

19 upon which such practice was discontinued and provide plaintiff with evidence to support that

20 assertion.  Moreover, defendants must provide plaintiff with any copy of a medical request form

21 which plaintiff submitted on or after July 22, 2003, seeking dental care, and must provide proof

22 of service of having done so within thirty days.  As modified herein, plaintiff's motion as to this

23 request is granted.

24              <u>Request No. 5</u>: Any and all Logs, Lists, or other documentation
reflecting grievances filed by CSP-Solano inmates against the
25              defendants from January 1, 1998 to the date of your response.

26 \\\\\

1    Response: Defendants object to this request on the grounds that it is vague,
     overbroad, and is not relevant nor calculated to lead to the
2    discovery of admissible evidence and it violates the privacy rights
     of inmates not involved in this lawsuit.  Defendants object to this
3    document request to the extent that it calls for information
     protected by the official information and Exemption to the
4    Freedom of Information Act privileges.  Defendants object to this
     request to the extent that it calls for confidential information
5    protected by the privacy rights of staff and inmates guaranteed by
     the United States Constitution, the California Constitution, and
6    applicable state statutes, such as Penal Code sections 832.7 and
     6126.3.  Finally, Defendants object to this request to the extent that
7    it calls for confidential information that would jeopardize the
     safety and security of the institution, staff and inmates.

8

9        For the reasons set forth in response to plaintiff's request no. 1, plaintiff's request

10   is denied.

11       Request No. 6:

12       Any and all documents created by any CSP-Solano staff member in
         response to a grievance filed by the plaintiff concerning his
13       medical care.

14       Response: This request is objected to on the grounds that this
         information would be part of Plaintiff's central and medical files,
15       portions of which are equally available to Plaintiff for inspection
         and copying pursuant to prison policies and procedures.

16

17       To defendants' assertion that this material is equally accessible to plaintiff in his

18   central and medical files, defendants add, in their opposition, that the number of inmates at CSP-

19   Solano who bring lawsuits makes such a request burdensome.  Opp., p. 6.  Plaintiff alleges that

20   not all the memoranda, interoffice communications, and staff instructions are attached to the

21   inmate appeals, nor are they placed in the inmates central or medical files.  Reply, p. 8.  Plaintiff

22   has also contended that his access to his prison files is extremely limited.

23       That plaintiff's request may be burdensome appears to be outweighed by the

24   relevance of such a request should there be any documentation responsive to the request which is

25   not contained in plaintiff's files.  Defendants must provide any documentation responsive to this

26   request that is not contained in plaintiff's central or medical prison files, or provide plaintiff with

                                        23

1   a verification that no such document exists, within thirty days.  Defendants must file proof of

2   having done as directed with the court within the same time frame.  Defendants should redact any

3   private or personal information, such as any other inmate's name, number or other identifying

4   information, or any information as to defendants or non-defendant staff, such as home addresses,

5   social security number, phone number, etc., should there be any contained in any such

6   documentation before producing it.  As modified by the court, the motion as to this request is

7   granted.

8           Request No. 7
            Any and documents created by any CSP-Solano staff member from
9           January 1, 1998 to date concerning the plaintiff's medical care and
            not included in items 4, 5, or 6 of this request.
10

11          The court will not set forth defendants' objections to this request because, having

12   interposed certain objections and without waiving same, defendants aver that they "do not

13   believe such documents exist."  The court cannot compel production of documents not within the

14   custody, possession or control of a party.  The motion as to this request must be denied.

15          Request No. 8: Any and all Waiting Lists, Appointment Lists, or
            Treatment Schedules generated by the Dental or Medical
16          department [sic] containing the plaintiff's name from the period of
            January 1, 1998 to the date of response.
17

18          For the same reasons as set forth with respect to Request No. 7, the motion as to

19   this request must be denied.

20          Request No. 9: Copies of all current licenses for all dental staff at
            CSP-Solano.
21
            Response: Defendants object to this request on the grounds that it
22          is  overbroad and is not relevant nor calculated to lead to the
            discovery of admissible evidence.  Defendants object to this
23          document request to the extent that it calls for information that is
            protected by the official information and Exemption to the
24          Freedom of Information Act privileges.  Defendants object to this
            request to the extent that it calls for confidential information
25          protected by the privacy rights of staff and inmates guaranteed by
            the United States Constitution, the California Constitution, and
26          applicable state statutes, such as Penal Code sections 832.7 and

24

1       6126.3.  Finally, Defendants object to this request to the extent that
it calls for confidential information that would jeopardize the
2       safety and security of the institution, staff and inmates.
Notwithstanding these objections, Defendants
3       will produce true and correct copies of current licenses of
Defendants Traquina and Cheung, and will produce a copy of
4       McIntyre's licensing information which was obtained from the
California Department of Consumer Affairs website.

5

6       Defendants assert that they have provided true and correct copies of defendants'

7 Traquina's and Cheung's licenses to practice dentistry as well as a copy of defendant McIntyre's

8 licensing information obtained from the state Department of Consumer Affairs.  Opp., p. 7.

9 Upon plaintiff's further inquiry with respect to special training or licenses in his May 23, 2005,

10 letter, defendants stated that they would look for any such information and now assert that all

11 responsive documents have been produced.  Defendants' point that, as phrased, plaintiff's request

12 for any license could include such irrelevant documents as a driver's license is well-taken.

13 Plaintiff's motion as to this request is denied.

14       <u>Request No. 10</u>: Copies of all Drug enforcement [sic]
Administration [sic] certificates for dentists with the pharmacy.
15

       <u>Response:</u>
16

17       Defendant objects to this request on the grounds that it is vague,
ambiguous, overbroad, and not relevant nor reasonably calculated
       to lead to the discovery of admissible evidence.  Defendants cannot
18       respond to this request as they do not understand to what Plaintiff
is referring.
19

20       According to defendants, plaintiff later clarified his request in his April 25, 2005

21 letter (<u>see</u> plaintiff's exhibits to MTC, pp. 40-43), that records are required to be kept by CDCR

22 of current drug enforcement administration certificates for dentists with the pharmacy.  Opp., p.

23 7, citing DOM § 54050.1(11).[13]  When defendants raised the question as to how such a certificate

24 relating to pharmaceuticals relates to the issues implicated in this action, plaintiff did not

25

26        [13] Once again, defendants' attachment did not contain the relevant regulatory subsection,
which the court reviewed on the CDCR website.

1   respond.  Opp., pp. 7-8, citing defendants' May 4, 2005, letter and plaintiff's May 23, 2005, letter

2   (Exhibits to MTC, at pp. 31-32, 39-41).  In his reply, plaintiff states that he believed that by their

3   letter response, defendants had simply dropped objections on grounds of relevance.  Reply, pp.

4   11-12.  Plaintiff avers that such certificates would be relevant to prove that there is no legal

5   reason a dentist could not prescribe pain medication if a diagnosis warranted such treatment.  Id.,

6   at 12.  Plaintiff goes on to assert that "dentists working in the pharmacy could possibly testify

7   concerning the amount of pain medication prescribed by the dental department over the period of

8   time the plaintiff was seeking medical care."  Id.   Plaintiff's explanation for needing copies of

9   the Drug Enforcement Agency (or Administration) certificates issued to CSP-Solano dentists

10  appears to be unreasonably wide of the mark.  His claim is not any defendant, or other party,

11  prescribed pain medication for his dental or TMJ conditions but that such prescriptions were not

12  filled.  The motion as to this request is denied.

13           Request No. 15: The personel [sic] files or [sic] defendants Carey,
14           Traquina, McIntyre, Cheung, and Cervantes.

15           Response: Defendants object to this request on the grounds that it
             is vague, overbroad and is not relevant nor calculated to lead to the
16           discovery of admissible evidence and it violates the privacy rights
             of inmates not involved in the lawsuit.  Defendants object to this
17           document request to the extent that it calls for information that is
             protected by the official information and Exemption to the
18           Freedom of Information Act privileges.  Defendants object to this
             request to the extent that it calls for confidential information
19           protected by the privacy rights of staff and inmates guaranteed by
             the United States Constitution, the California Constitution, and
20           applicable state statutes, such as Penal Code sections 832.7 and
             6126.3.  Finally, Defendants object to this request to the extent that
21           it calls for confidential information that would jeopardize the
             safety and security of the institution, staff and inmates.

22           Plaintiff, recognizing the confidentiality and privacy issues raised by this request,

23  seeks to task the court with the burden of an in camera review of defendants' entire personnel

24  files to discern whether the information therein contains any evidence of motive, habit, intent and

25  absence of mistake.  Reply, pp. 12-13, citing, inter alia, Fed. R. Evid. 401 and 404(b).  The

26  motion as to this overly burdensome and insufficiently supported request is denied.

Request No. 16: Any and all current licenses and certivicates [sic] of training held by defendants.

Response: [Duplicates the objections in response to Request No. 15, with the following addition]
Particularly, the terms "licenses" and "certificates of training" are vague, overbroad, and ambiguous as such terms are not limited in any way related to the issues in this case.  Notwithstanding and without waiving these objections, Defendants will produce true and correct copies of current licenses of Defendants Traquina and Cheung, and will produce a copy of McIntyre's licensing information which was obtained from the California Department of Consumer Affairs website.

Having reviewed the arguments of both parties, it appears that plaintiff has narrowed his request to one relating to his allegation that defendant Cervantes practiced medicine without a license.  Defendant Cervantes in plaintiff's request for admissions conceded that he had no medical license.  MTC, Response to Request for Admission no. 5, p. 48.  Plaintiff seeks information as to whether defendants Carey or Cervantes hold a Medical Technical Assistant's license, Emergency Medical Technician's license, nurse's license or any other type of certification or license which would indicate the level of any medical training they might possess to make determinations as to plaintiff's medical condition.

This court has recommended defendant Carey's dismissal from this action in his individual and/or supervisory capacity, finding that this action should proceed against him for prospective relief only in his official capacity.  Plaintiff could simply have directed an interrogatory toward defendant Cervantes to elicit the information he seeks.  Notwithstanding, as to defendant Cervantes only, plaintiff's motion as to this request, as narrowed herein, is granted, and defendants are directed to produce a copy of any certificate or license of medical or dental training defendant Cervantes has earned, or to inform plaintiff specifically that he does not have any such certificate, license or training, and to file proof of service of any production and/or response, all within thirty days.

Request No. 17: Minutes of the monthly dental staff meetings from the period January 1, 1998 to the date of response.

Request No. 18: Minutes of the Chief [sic] dentist's meetings from
the period January 1, 1998 to the date of the response.

Request No. 19: Dental statistics quarterly summery [sic] reports
from the period January 1, 1998 to the date of response.

Response: [The response to Request Nos. 17, 18, 19 each
duplicates the objections interposed in response to Request No. 15,
with each preceding the following statement]

Notwithstanding and without waiving these objections, Defendants
are not aware that such documents exist.

As plaintiff has been informed above, the court cannot compel defendants to

produce any document or tangible item not within their custody, possession or control.

Defendants represent that documents responsive to plaintiff's requests do not exist.  These

requests must be denied.

Request No. 20: Any and all notifications of pending law suit [sic]
received by the defendants from the period of January 1, 1998 to
the date of the response.

Response: Defendants object to this request on the grounds that it
is vague as to the term "notifications," overbroad and is not
relevant nor calculated to lead to the discovery of admissible
evidence.  In their positions as prison personnel, particularly
Warden Carey, Defendants are subject to constant litigation by
prisoners, and such cases are not necessarily relevant to the issues
in this case.

After reviewing the parties' arguments on this request, the court finds that

plaintiff would have been better served by asking defendants to identify in response to an

interrogatory, any lawsuit pending, from January, 1, 1998 to the present, brought by an inmate

against any defendant related to the issues raised by his own lawsuit, i.e., inadequate dental care

and/or retaliation for filing grievances concerning dental treatment.  As worded, the production

request is confusing, overbroad, vague, burdensome and unlikely to produce the results sought by

plaintiff.  Plaintiff, in his subsequent correspondence, sought to clarify the request, seeking to

emphasize its relevance.  The court notes that in the second set of requests for documents,

1    Request No. 11, plaintiff did tailor his request and has received production of the "docket reports

2    of cases involving denial or delay of medical care naming Defendants during the relevant time

3    period, that were obtained online from the Pacer system."  See plaintiff's June 22, 2006 filing,

4    appending defendants' responses to his second set of requests for production of documents.

5    Therefore, the motion as to this request is denied as moot.

6              *Second Set of Request for Production of Documents*

7              Plaintiff's second set of requests for production in essence mirror plaintiff's first

8    set, but were an effort, plaintiff contends, to clarify certain requests made in the first set.  Reply,

9    p. 18.  Plaintiff concedes their essentially duplicative nature.

10             On November 30, 2005, the court ordered that as to the second set of production

11   requests by plaintiff, although defendants were granted an extension of time to file their

12   responses because they had inadvertently failed to respond timely, the court also stated that

13   defendants had thereby waived all objections, with the exception of those based on attorney-

14   client privilege or related to institutional security.

15             Having reviewed the requests and responses, the court finds that plaintiff's second

16   set of requests were either responded to appropriately by defendants in the first set of responses,

17   have been addressed and either denied or granted, as modified, herein, or have received a

18   substantive response and production by defendants.  Plaintiff's motion with respect to the second

19   set of requests for production of documents is denied as moot.

20             *Requests for Verification*

21             The court has also reviewed plaintiff's requests for verification by defendants

22   Traquina, Cervantes, and McIntyre of the authenticity of documents submitted to them by

23   plaintiff.  The undersigned has also reviewed defendants' responses.  As defendants contend,

24   they have conceded that the documents submitted that were in plaintiff's central file are genuine,

25   but as to certain of the documents and to the extent the document was not to be found in

26   plaintiff's central file, when a particular defendant had not authored/drafted that document, has

1  averred that he or she is not the proper person to verify the document.  Opp., p. 13.   The court

2  will deny plaintiff's requests for verification.

3  Plaintiff's Motion for Protective Order

4          Plaintiff moves the court for a protective order, relieving him of the obligation to

5  be deposed, upon defendants' request/notice of a deposition, or to respond to defendants'

6  requests for production of documents.  More broadly, plaintiff seeks an order staying discovery,

7  until defendants' motion to dismiss and plaintiff's motion to compel is resolved.

8          The Federal Rules provide that good cause is required in order for a party to

9  obtain a protective order.  Fed. R. Civ. P. 26(c); Kiblen v. Retail Credit Co., 76 F.R.D. 402, 404

10  (E.D. Wash. 1977).  "Good cause" exists when justice requires the protection of "a party or

11  person from any annoyance, embarrassment, oppression, or undue burden or  expense."  Fed. R.

12  Civ. P. 26(c).  To prevail on a motion for a protective order, the party seeking the protection has

13  the burden to demonstrate "particular and specific demonstration[s] of fact, as distinguished from

14  conclusory statements . . . ."  Id.; Twin City Fire Ins. Co. v. Employers Ins. of Wausau, 124

15  F.R.D. 652, 653 (D.Nev. 1989); Kamp Implement Co. v. J.I. Case Co., 630 F. Supp. 218, 219

16  (D.Mont. 1986).  The determination must be made on a case-by-case basis.  Skellerup Ind. Ltd. v.

17  City of Los Angeles, 163 F.R.D. 598, 601 (C.D. Cal. 1995).

18          In requesting the stay of discovery, to which defendants have filed no response,

19  plaintiff avers, inter alia, that he seeks an order of protection from having to respond to discovery

20  requests that may become unnecessary, should the motion to dismiss be granted.   However, this

21  is an incorrect premise because defendants' motion only goes to plaintiff's claims of fraud and

22  conspiracy and seeks dismissal outright of only one defendant; moreover, by plaintiff's filing of

23  June 22, 2006, wherein he seeks appointment of counsel, plaintiff states that he has since

24  "submitted" to a deposition taken by defendants.[14]  Plaintiff's motion is denied as moot.

25  

26          [14] Plaintiff wrongly assumes that he was deposed without a court order.  So long as
   defendants provided plaintiff with the appropriate notice, a point that does not appear to be in

1    Motion for Appointment of Counsel

2            Plaintiff has repeatedly sought appointment of counsel, on November 12, 2004,

3    March 8, 2005, June 7, 2005, all of which requests have been denied.  Plaintiff has been

4    previously informed that the United States Supreme Court has ruled that district courts lack

5    authority to require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United

6    States Dist. Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the court

7    may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v.

8    Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36

9    (9th Cir. 1990).  In the present case, the court has repeatedly not found the required exceptional

10   circumstances.

11           Upon the denial of his third request for appointment of counsel, plaintiff filed a

12   request for reconsideration of that order.  By Order, filed on August 16, 2005, the district judge

13   affirmed this court's denial of the request.  Plaintiff's fourth request for the appointment of

14   counsel will therefore also be denied.  Moreover, plaintiff has demonstrated in this litigation a

15   level of competence quite sufficient to proceed in this matter pro se.

16           Accordingly, IT IS ORDERED that:

17           1.  Plaintiff's September 14, 2005, motion to compel further response and

18   production with respect to his first set of requests for production is GRANTED in part, as

19   modified herein, with respect to Request Nos. 3, 6, 16; and DENIED in part, as to Request Nos.

20   1, 5, 7, 8, 9, 10, 15, 17, 18, 19, 20.

21           2.  Plaintiff's September 14, 2005, motion to compel further response and

22   production with respect to his second set of requests for production is denied as moot;

23           3.  Plaintiff's September 14, 2005, motion to compel further verification of

24   document authenticity by defendants is denied.

25   ─────────────────

26   contention, defendants were proceeding pursuant to a court order in deposing plaintiff.  See
     Discovery Order filed on February 10, 2005.

1    4.  Plaintiff's March 21, 2006, motion for a protective order is denied as moot;

2  and

3    5.  Plaintiff's June 22, 2006 motion for appointment of counsel is denied.

4    Accordingly, IT IS HEREBY RECOMMENDED that

5    1.  Defendants' December 5, 2005 motion to dismiss be granted in part and

6  dismissed in part as follows:

7    a.) Granted as to plaintiff's claims of fraud and conspiracy and these

8  claims be dismissed as to all defendants;

9    b.)  Granted as to plaintiff's claims pursuant to 42 U.S.C. § 1985, and

10  these claims be dismissed;

11    c.)  Granted as to defendant Carey, in his individual capacity only, for

12  money damages, and this claim be dismissed;

13    d.)  Denied as to defendant Carey, in his official capacity, and this matter

14  proceed as to this defendant on a claim for relief in the form of prospective injunctive relief only;

15    2.  Plaintiff's claims pursuant to Cal. Civ. Code § 52.1 be dismissed;

16    3.  This matter proceed only as to plaintiff's claims against defendants under the

17  First and Eighth Amendments, and any supplemental state law negligence claim.

18    These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

20  days after being served with these findings and recommendations, plaintiff may file written

21  objections with the court.  Such a document should be captioned "Objections to Magistrate

22  Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections

23  \\\\\

24  \\\\\

25  \\\\\

26  \\\\\

1   within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v.</u>

2   <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   DATED:  7/12/06

4                                                                   /s/ Gregory G. Hollows

5                                                                   _____
                                                                    GREGORY G. HOLLOWS
                                                                    UNITED STATES MAGISTRATE JUDGE

6   GGH:009
    broo1254.mtd+

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26