1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RONALD DWANE BROOK,

11              Plaintiff,                    No. CIV S- 04-1254 GEB GGH P

12        vs.

13   TOM L. CAREY, Warden, et al.,

14              Defendants.              ORDER

15   _____/

16   <u>Introduction</u>

17              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Pending before the court is plaintiff's motion for sanctions, filed on August 31, 2006, to

19   which defendants filed their opposition, on September 18, 2006.[1]

20   <u>Jurisdiction</u>

21              As a threshold matter – plaintiff has filed a putative interlocutory appeal of the

22   dismissal of certain of his claims (and of a defendant in his individual capacity only).  Although

23   "[a]s a general rule, the filing of a notice of appeal divests a district court of  jurisdiction over

24   those aspects of the case involved in the appeal[,]" <u>Stein v. Wood,</u>127 F.3d 1187, 1189 (9th Cir.

25   _____

26   [1] Defendants' very recently submitted motion for summary judgment will be adjudicated at a later date.

1

1  1997), the district court retains jurisdiction in this instance because this circuit has long

2  "recognized an exception to the general rule that a valid notice of appeal divests the district court

3  of jurisdiction over all but tangential matters," when the appeal is patently frivolous.  Marks v.

4  Clarke, 102 F.3d 1012, 1018 n. 8 (9th Cir. 1996), citing Chuman v. Wright, 960 F.2d 104, 105

5  F.2d 104, 105 (9th Cir. 1992) ("frivolous or forfeited appeal does not automatically divest the

6  district court of jurisdiction.").  See also, U. S. v. Powell, 24 F.3d 28 (9th Cir. 1994); U.S. v.

7  LaMere, 951 F.2d 1106, 1108 (9th Cir. 1991); U.S. v. Claiborne, 727 F.2d 842 (9th Cir. 1984).

8  The appeal in this action has not been made pursuant to 28 U.S.C. § 1292 (interlocutory

9  decisions) and is otherwise without merit.  Plaintiff has not appealed from an appealable order

10 (no final order from which to appeal).  Fletcher v. Gagosian, 604 F.2d 637, 638 (9th Cir.1979) (if

11 a district court dismisses less than all claims in an action or fewer than all defendants, such a

12 dismissal is not a final order appealable under 28 U.S.C. § 1291).  A party may appeal "final

13 decisions of the district courts...." 28 U.S.C. § 1291.   "A 'final decision' for purposes of § 1291

14 is a 'decision by the District Court that ends the litigation on the merits and leaves nothing for the

15 court to do but execute the judgment."  Duke Energy Trading and Marketing, L.L.C. v. Davis, et

16 al., 267 F.3d 1042, 1048 (9th Cir. 2001), quoting Coopers & Lybrand v. Livesay, 437 U.S. 463,

17 467, 98 S. Ct. 2454 (1978).

18 Second Amended Complaint

19         This action proceeds on the second amended complaint, filed on July 20, 2005, as

20 modified by the Order, filed on September 12, 2006, adopting the Findings and

21 Recommendations, filed on July 12, 2006.[2]  Plaintiff proceeds against defendants Warden Carey,

22 Dr. Traquina, Dr. McIntyre, Dr. Cheung and Correctional Officer Cervantes.  Plaintiff proceeds

23 against defendant Carey solely in his official capacity for prospective injunctive relief pursuant to

24 ─────────────────

25 [2] In the 9/12/06, Order, plaintiff's claims of fraud and conspiracy were dismissed, as well as were his claims pursuant to 42 U.S.C. § 1985 and Cal. Code § 52.1.  In addition, defendant

26 Carey was dismissed as a defendant in his individual capacity with respect to plaintiff's claim for money damages, pursuant to 42 U.S.C. § 1983.

42 U.S.C. § 1983.  Plaintiff is proceeding on his claims against defendants under the First and

Eighth Amendments and any supplemental state law negligence claim.  The court notes here that

as any supplemental state law negligence claim against all defendants remains, the matter

proceeds on this basis as well against defendant Carey.

On July 22, 2003, plaintiff submitted a medical request form to the dentist's

office, complaining of pain in his jaw, pain in his teeth near the site of an extraction, an inability

to eat or sleep properly, and expressing concern that the condition would become serious and

inoperable.  Second Amended Complaint (SAC), p. 2.  On August 5, 2003, plaintiff received

notice from the medical department that his name was being placed on a waiting list.  SAC, pp.

2-3 & Exhibit 2 (to SAC).  On October 15, 2003, plaintiff filed an administrative appeal with the

dentist's office complaining of delay in medical treatment.  Id., at 3.  On November 15, 2003,

plaintiff filed another medical request form with the dental office, reiterating his request of July

22, 2003.  Id.

On November 17, 2003, plaintiff filed another administrative appeal that

concerned the dental office for delay of medical treatment, which included a request to defendant

Cervantes that he assign a log number to the new appeal, plaintiff's original not having been

returned, and requesting that the new appeal be processed.  Id. & Exhibits 1 and 3.  Plaintiff

believes defendant Cervantes read the appeal and attached note and was aware that plaintiff was

claiming a serious medical need which might result in "irreparable damage."  Id.

On November 19, 2003, defendant Cervantes returned the 11/17/03 appeal to

plaintiff with instructions to send it for informal review directly to the dental clinic.  Id.  Plaintiff

alleges that "when circumstances are such that regular appeal time limits may" pose a risk to an

inmate's safety "or cause other serious and irreparable harm, the appeal shall be processed at the

second level and completed within five days."  SAC, p. 4.  On November 20, 2003, plaintiff re-

submitted his appeal to the appeals coordinator, defendant Cervantes, reminding him that

plaintiff's earlier attempt for a response at the informal level from the dental clinic had failed,

asking again that the appeal be logged and processed properly, asserting that the appeal

concerned a serious medical condition which delay was making worse, and asking defendant

Cervantes not to prevent him from receiving treatment.  Id. & Exhibit 4.

On November 23, 2003, plaintiff received notice from the dental clinic that his

second request for dental care had been received and that his name was being placed on a waiting

list for dental treatment in chronological order.  Id. & Exhibit 2.  The following day plaintiff

filed a State Board of Control claim.  Id. & Exhibit 5.

On November 26, 2003, plaintiff's 11/17/03 appeal was once again returned to

him by defendant Cervantes with the following notation: "Try this, send 602 directly to medical

appeals analyst at primary clinic.  Your 602 will be tracked by medical appeals analyst"; plaintiff

did as he was instructed.  SAC, pp. 4-5 & Exhibit 6.  Plaintiff sent the appeal as instructed on

November 30, 2003.  Id., at 5 & Exhibit 7.

On December 7, 2003, plaintiff sought a copy of a memorandum setting forth the

wait times for medical care at CSP-Solano.[3]  Id.  Plaintiff obtained a memorandum of medical

care waiting periods, dated December 10, 2003, and signed by defendant CMO[4] Traquina.  Id., &

Exhibit 8.  On December 19, 2003, plaintiff's appeal was partially granted at the informal level

with the result that his name was placed on a waiting list and plaintiff was to be seen in

chronological order.  Id. & Exhibit 1.  That same day, plaintiff returned the appeal to the medical

appeals analyst for first level review, as defendant Cervantes had instructed that the appeal would

be tracked by the medical appeals analyst.  Id.  The appeal was returned on December 29, 2003,

with a screening form indicating that plaintiff needed to send it on to the regular inmate appeals

office for a log number, after which that office would forward the appeal to the medical appeals

analyst for first level review; plaintiff did as instructed that same day.  SAC, at 5-6 & Exhibit 9.

---

[3] California State Prison-Solano in Vacaville.

[4] Chief Medical Officer.

On January 3, 2004, the appeal was returned to plaintiff with a screening form indicating that he had to wait seven days before submitting the appeal because he had already submitted an appeal on December 29th. SAC, at 6 & Exhibit 10.  Plaintiff immediately returned the appeal for processing and complained of the delay.  Id. & Exhibit 11.

On January 6th and 7th, 2004, plaintiff enlisted the help of non-defendant Housing Officer Walker, to receive attention for his serious dental problem, and Officer Walker apparently called the dental office on both days.  Id. & Exhibit 12.  On January 8, 2004, plaintiff received notice that his 11/17/03 appeal had been given a log number, CSP-S-04-00040, and would be processed at the first formal level in the medical department.  Id.

On February 3, 2004, not having received any response, plaintiff, threatening to sue, again sought the assistance of Officer Walker, who called the dentist's office a third time, at about 11:30 a.m. SAC, at 7.  After the third call, Walker wrote plaintiff a pass for 12:30 p.m. that same day to the dental clinic for triage.  Id. & Exhibit 13.

Defendant Cheung interviewed and examined plaintiff, on February 3, 2004, and stated that he was scheduling a dental appointment.  Id.  Thereafter, on February 6, 2004, plaintiff was escorted for a dental examination by defendant Cheung, who "took a complete set of x-rays of plaintiff's teeth, including the hinge area of the jaw," told plaintiff that his receding gum line was due to the many years of tooth brushing and the migration of his teeth on either side of a tooth extraction site; defendant said there was no other dental problem.  Id., at 7-8.  Defendant Cheung conceded that a one-tooth partial or bridge would solve plaintiff's problems with his teeth and jaw, but averred that the state would not pay for a bridge.  Id., at 8.

Plaintiff explained that the hinge of his jaw was loose and his jaw muscles were weak and that the pain in his jaw caused his fear that he was developing cancer or an otherwise irreparable problem.  Id. Defendant Cheung said he would put plaintiff's name on a waiting list to see an oral surgeon with whom plaintiff should discuss his jaw problems.  Id. Plaintiff asked defendant Cheung to remove a sharp point in a tooth that kept cutting his tongue; defendant used

a power tool to smooth away the point.  Id.  Defendant Cheung ended the appointment with the advice that rubbing toothpaste on his teeth with his fingers would dull plaintiff's pain.  Id.

Plaintiff was examined, on February 17, 2004, by an oral surgeon, Dr. Jennings, not a defendant, who found plaintiff's teeth and gums to be in good condition with no obvious problems, but diagnosed plaintiff as having TMJ[5] and prescribed an exercise to cure the problem, telling plaintiff how to do the exercise(s) and when (each morning and evening for ten seconds). Id., at 9.  When plaintiff asked, Dr. Jennings informed him that doing the prescribed exercises would have prevented the TMJ.  Id.  Plaintiff alleges that denial of dental care can lead to loss of teeth, loss of bone density, deformity, infection and even death.  Id. & Exhibit 14.

Defendant McIntyre, on March 5, 2004, partially granted plaintiff's 11/17/03 appeal at the first formal level, stating that plaintiff had been seen by a doctor.  Id. & Exhibit 15.  On April 4, 2004, plaintiff submitted a medical request form for dental care.  SAC, at 10.  On April 8, 2004, defendant Traquina granted the 11/17/03 appeal in full at the second formal level, stating that plaintiff's medical problems were being treated.  Id. & Exhibit 16.

On April 25, 2004, plaintiff filed an appeal, requesting the dental care defendant Traquina stated that plaintiff was, or was to be, receiving.  Id.  On May 10, 2004, plaintiff's appeal was returned, informing plaintiff that his name was not on the dental care waiting list.  Id. & Exhibit 17.

On June 1, 2004, N. Grannis, Chief of Inmate Appeals (not a defendant), refused to review the 11/17/03 appeal at the third or director's level, which is required by the State Board of Control.  SAC, at 10 & Exhibit 18.[6]  On June 11, 2004, plaintiff received acknowledgment of his complaint (about defendant Traquina and his alleged denial of dental care for plaintiff) having been filed with the state medical board; on June 14, 2004, plaintiff was informed in a

---

[5] Temporomandibular Joint Dysfunction.

[6] Plaintiff's exhibit indicates that the appeal was returned because it had been granted by the institution and there was nothing to be reviewed.

1   notice from the medical board that his complaint did not come within the board's jurisdiction,

2   but that his complaint would be forwarded to Dept. of Corrections Health Care Servs. Div.  Id. &

3   Exhibits 19 and 20.

4            On July 1, 2004, plaintiff filed a CDC Form 7362 medical request seeking dental

5   care; on July 14, 2004, plaintiff received a "dental receipt" for the form.  SAC, at 11 & Exhibit

6   21.  On August 13, 2004,[7] plaintiff filed another request for dental care on a CDC Form 7362; on

7   the same day, he was informed that he was already on the waiting list.  Id. & Exhibit 22.

8            Plaintiff alleges that defendant Carey was aware of plaintiff's appeal and Board of

9   Control claim, thus knowing of his need for medical care and his difficulty in obtaining it, but

10  failed to act for plaintiff.  SAC, at 11.  Defendant Carey is, and has been, aware of the medical

11  department's unconstitutional policy of denying inmates medical care but fails to rectify it,

12  despite his power and legal duty to do so.  SAC, at 11.  Defendant Carey's failure to prevent a

13  policy of denial or delay of medical care to plaintiff constituted deliberate indifference to

14  plaintiff's serious medical condition in violation of the Eighth Amendment and his due process

15  rights under the Fourteenth Amendment; in failing to ameliorate the policy, Carey has ratified the

16  conduct of the other defendants.  SAC, at 11-12.  Defendant Carey's failure to prevent the

17  unconstitutional medical care policy amounted to negligence under state law and violated

18  plaintiff's rights under the state constitution.  SAC, at 12.  Defendant Carey knew his failure to

19  prevent the policy of denied or delayed medical care violated plaintiff's state and federal rights

20  and state and federal laws.  SAC, at 12 & Exhibits 23 and 24.[8]

21           Plaintiff alleges that all defendants delayed or denied medical care to prisoners.  Id.

22  Plaintiff alleges that defendant Cervantes violated state and federal laws by, in essence,

23  _____

24       [7] The form itself indicates that the request was made on August 3, 2004.

25       [8] These two incomplete documents, which appear to be the partial declarations of two
    inmates, other than plaintiff, complaining of the dental care, or lack thereof, they received at
26  CSP- Solano, must be disregarded/stricken because they are partial, unsigned and lack any
    foundation or authentication.

1  practicing medicine without a license, misdirecting appeals and using his own judgment to assess

2  the seriousness of plaintiff's medical condition.  SAC, at 13.  Defendants Traquina, McIntyre,

3  Cheung and Cervantes were deliberately indifferent to plaintiff's serious medical condition in

4  violation of the Eighth Amendment and of his due process rights under the Fourteenth

5  Amendment, as well as state law, and were aware of violating plaintiff's rights.  Id.  Defendants

6  violated plaintiff's rights under the state constitution, and were negligent under state law;

7  defendants knew that the unconstitutional policy of delayed or denied medical care caused pain

8  and suffering to plaintiff.  SAC, at 14.  Defendants knew or should have known that their denied

9  or delayed medical care could lead to irreparable physical damage to plaintiff; defendants

10  disregarded a substantial risk of serious harm to plaintiff.  Id.  Defendants relied on untrained

11  staff to determine the seriousness of plaintiff's condition.  Id.  Defendants' delay in processing

12  his medical appeals denied his needed medical care.  Id., at 14-15.  Defendants also retaliated

13  against him by denying medical care because he filed an appeal against dental staff.  SAC, at 16.

14  Defendants' delay in processing his appeals violated his First Amendment right of access to the

15  courts and his due process rights.  Id.  Defendant fears further retaliation from the filing of this

16  lawsuit.  SAC, at 17.

17          Plaintiff seeks declaratory and injunctive relief as well as money damages.  SAC,

18  at 19-21.

19  Motion for Sanctions

20          Plaintiff moves for unspecified sanctions, contending that defendants have not

21  acted in good faith with respect to producing sick call request sheets (CDC Form 7263) from

22  January 1, 1998 to the date of his production request, which was on February 5, 2005.  Motion

23  for Sanctions (Mtn.), pp. 1-2.  The initial response to plaintiff's request, on April 7, 2005, was an

24  objection based on the ground that plaintiff's medical file was equally available to him for

25  copying and inspection.  Mtn., p. 2; Opposition (Opp.), p. 2.  From April 25, 2005, through June

26  21, 2005, plaintiff and defense counsel corresponded, seeking to resolve the issue informally.

1   Mtn., pp. 2-4; Opp., p. 2.  Plaintiff explained that he had never been able to find any CDC Form

2   7263 sick call requests in his medical file; defendants' counsel responded that the 7263 medical

3   request form currently is to be placed in an inmate's medical file, including requests for dental

4   care.  Mtn., pp. 2-3; Opp., p. 2.  Counsel, however, also stated that dental care request forms in

5   the past were not always included in the medical file and that they may not exist any longer,

6   saying that he would ask the institution to conduct another search to see if they could be located.

7   Mtn., p. 3.  In response, plaintiff expressed concern that prior medical request forms might have

8   been removed from his medical file, to which defendants' counsel responded, saying that the

9   "sheer number" of requests led to the practice of not keeping such forms beyond the day they

10  were used as their purpose was basically to reserve a medical or dental appointment.  Mtn., p. 3;

11  Opp., p. 2.  Counsel went on to re-assert that the more current practice, as of some unspecified

12  time in 2005, became to retain the requests in the medical file of an inmate and stated again that

13  he would ask for another search for the dental request forms to be conducted at the prison.  Id.

14          As defendants note, on September 14, 2005, plaintiff filed a motion to compel,[9]

15  asking the court to compel defendants to produce, inter alia, his sick call sheets or medical

16  request forms from January 1, 1998, through the present, to which defendants filed their

17  opposition, stating that prior sick call sheets were discarded but current sheets were retained in

18  inmate medical files.  Opp., p. 2.  By Order, filed on July 12, 2006, the court granted plaintiff's

19  motion as to this request, ordering defendants to specify the date upon which the practice of

20  destroying sick call sheets was discontinued and to provide proof thereof to plaintiff.  See Order,

21  filed on 7/12/06, pp. 22, 31.  Moreover, defendants were ordered to provide plaintiff with a copy

22  of any medical request form submitted by plaintiff on or after July 22, 2003, and to provide the

23  court with proof of service thereof.  Id.  Defendants aver that, on August 22, 2006, plaintiff was

24  _____

25          [9] Plaintiff also outlines his efforts by way of administrative grievance to be permitted an
    adequate review of his medical files, so that he could locate the documents he was repeatedly
26  told were in his files.  Mtn., p. 4.  Evidently, even when the appeal was granted, plaintiff was not
    informed of the time which had supposedly been set for the review.  Id.

1  provided with the sick call sheets currently in his medical file along with a declaration from a

2  prison official explaining the past practice with regard to the sick call sheets.  Opp., p. 3,

3  referencing docket entry # 78.

4          Defendants' amended response to the request at issue was:

5          Defendants do not have any responsive documents from January,
        1998, through November 2005, because the institution did not
6        retain the CDC 7362 forms in the inmate's respective medical file
        until December 2005.  Defendants are producing all CDC 7362
7        forms submitted by plaintiff after November 2005.  (See
        Attachment A, Declaration of L. Mefford; and, Attachment B,
8        CDC 7362 forms filed by inmate Brooks after December 2005.

9  Mtn., Exhibit (Exh.) B, p. 23.

10         In the Medford declaration, a Correctional Health Services Administrator at CSP-

11  Solano stated, inter alia, the following:

12         CDC 7263 forms were not kept in the inmate's medical files until
        December 2005.  Before this period, the forms were kept in boxes
13        in a CDCR storage facility.  Unfortunately, these forms were
        accidentally destroyed in 2005, because the boxes they were in
14        were mis-marked and labeled to be destroyed.

15         Plaintiff complains that he had repeatedly sought the requested documents

16  through discovery, which requests defendants had repeatedly denied, and that even after the court

17  ordered production, defendants delayed or denied access to the documents at issue.  Mtn., p. 5.

18  Plaintiff states that the destroyed documents would have demonstrated "how often and how

19  desperately the plaintiff had tried to obtain medical care for the pain and suffering he was forced

20  to endure."  Id.   He avers that defendants did not inform the court in their opposition to the

21  motion to compel that the documents had been destroyed in December of 2005, and that

22  defendants had ten months to secure the documents, but chose instead to deny they existed and

23  kept them from plaintiff.  Id.

24         It is not clear to the court how plaintiff concludes that the documents were

25  destroyed in December of 2005, the response only indicates that the sick call forms were not kept

26  on the individual inmate medical files until December, 2005.  Moreover, the response to the

1   motion to compel was filed on November 18, 2005, and defendants could not have made any

2   representation as to what occurred at a date that at that point had not yet been reached.

3            Defendants' counsel recounts a somewhat murky history of the practice of the

4   prison with respect to sick call request forms.  Apparently, the institution informed defense

5   counsel that prior to 2005, the forms were not retained at all once submitted.  At some undefined

6   time in 2005, and for some unspecified reason, the practice changed and the prison began to

7   retain the sick call request forms in a storage facility.  Opp., p. 2.  Thereafter, the forms which

8   had begun to be stored only some time in 2005 were inadvertently destroyed or discarded

9   because they were in boxes that were mis-marked and labeled for destruction.  Id.  Finally, in a

10  third change of practice, in December, 2005, the medical request forms began to be placed

11  directly into inmate medical files.  Id.

12           Taken at their word then, there was no practice of maintaining records of any of

13  plaintiff's sick call requests, or those of any other CSP-Solano inmate, prior to 2005, and as to

14  the ones that were begun to be stored as of some time in 2005, they were destroyed by mistake.

15  Defendants contend that they had no duty to maintain medical files and no involvement in the

16  prison's practice of discarding the medical request forms.  Opp., p. 3.  While the court

17  understands plaintiff's frustration, and the explanation for the variable, vague and ever-changing

18  custom of the prison with regard to these requests is less than entirely satisfactory, there is no

19  substantial evidence of bad faith on the part of the defendants on their counsel.  Moreover, prison

20  officials are entitled to leeway in the manner of prison administration; they should not be

21  unnecessarily hamstrung by courts in the decisions they make with regard to prison record-

22  keeping generally.  "[F]ederal courts must remember that the duty to protect inmates'

23  constitutional rights does not confer the power to manage prisons or the capacity to second-guess

24  prison administrators, for which we are ill-equipped."  Bruce v. Ylst, 351 F.3d 1283, 1290 (9th

25  \\\\\

26  \\\\\

11

1   Cir. 2003), quoting <u>Toussaint</u>[10] v. McCarthy (<u>Toussaint</u> <u>IV</u>), 801 F.2d 1080, 1086 (9th Cir.1986):

2   "[T]he relief ordered by federal courts must be consistent with the policy of *minimum intrusion*

3   *into the affairs of state prison administration....*" <u>Toussaint</u>, <u>supra</u>, at 1086 (emphasis added in

4   <u>Bruce</u>, <u>supra</u>, at 1290.

5            Plaintiff is not clear as to what form he would like any sanctions to take.  While

6   defendants did not act in evident bad faith, it does appear that they could have discovered or

7   disclosed in a more timely fashion that the request forms sought had been destroyed.  It is less

8   clear whether defendants could or should haven taken steps to secure the forms prior to their

9   being discarded.  Given that "[f]ederal courts should not, in the name of the Constitution,

10  become enmeshed in the minutiae of prison operations," <u>Toussaint</u>, <u>supra</u>, 801 F.2d at 1086,

11  there is an insufficient basis for the court, pursuant to Fed. R. Civ. P. 37(c)(1), to impose

12  sanctions upon the defendants in this instance.  However, in the pending motion for summary

13  judgment, defendants will not be permitted to set forth as an undisputed fact that plaintiff did not

14  submit sick call request forms in the period up to December 2005, related to his need for dental

15  care, should they have sought to do so.  Moreover, the court will accept plaintiff's testimony that

16  he made multiple requests for dental treatment during the period from July 2003 until December

17  2005, the time during which defendants concede the prison either did not maintain records of

18  request forms or for which the records of request forms have been destroyed, should plaintiff

19  raise the issue in his opposition to the motion for summary judgment.  To the extent that the issue

20  of repeated sick requests for which there is no record may be material, it may become a disputed

21  issue of fact.  However, plaintiff's  motion for unspecified sanctions must be denied at this time.

22  \\\\\

23  \\\\\

24  \\\\\

25

26           [10] Misspelled in <u>Bruce</u> as "<u>Touissant</u>."

1            Accordingly, IT IS ORDERED that plaintiff's August 31, 2006, motion for

2    sanctions is denied without prejudice.

3    DATED: 3/23/07                                    /s/ Gregory G. Hollows

4                                                      _____
                                                       GREGORY G. HOLLOWS
                                                       UNITED STATES MAGISTRATE JUDGE
5

     GGH:009
6    broo1254.ord

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26