1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RONALD DWANE BROOK,

11             Plaintiff,              No. CIV S-04-1254 GEB GGH P

12        vs.

13   TOM L. CAREY, Warden, et al.,     ORDER &

14             Defendants.             FINDINGS AND RECOMMENDATIONS

15   _____/

16   Introduction

17             Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Pending before the court are 1) plaintiff's motion for sanctions, filed on August 31, 2006,

19   to which defendants filed their opposition, on September 18, 2006; and 2) defendants' motion for

20   summary judgment, filed on, January 17, 2007, to which plaintiff filed an opposition, on

21   February 5, 2007; defendants' reply was filed on February 13, 2007.[1]

22             In the main, this case involves a damages action against prison officials for poor,

23   arguably deliberately indifferent dental treatment.  In § 1983 actions, the focus of damages

24   _____

25        [1] Plaintiff's February 21, 2007, "rejoinder to defendants' reply," is a filing not
     contemplated within the Federal Rules of Civil Procedure and the Local Rules and it will be
26   disregarded.

                                          1

1   actions is on an individual defendant's responsibility.  However, medical or dental treatment in a

2   prison is a process marked by the participation (or lack thereof) of many persons within the

3   system.  Most of these cases involve incremental action, or inaction, of individuals, which when

4   combined together paint a picture of disputed facts about undue delay or other poor performance,

5   but when viewed from the individual perspective of each defendant, each incremental step often

6   seems far less than the definition of deliberate indifference would allow.  This problem, when

7   added to the lack of expert evidence from plaintiff's perspective, especially in the area of

8   causation, dooms almost every one of these lawsuits.

9            For the reasons expressed below, defendants' motion for summary judgment is

10  granted in part and denied in part.

11  Jurisdiction

12           As a threshold matter – plaintiff has filed a putative interlocutory appeal of the

13  dismissal of certain of his claims (and of a defendant in his individual capacity only).  Although

14  "[a]s a general rule, the filing of a notice of appeal divests a district court of  jurisdiction over

15  those aspects of the case involved in the appeal[,]" Stein v. Wood,127 F.3d 1187, 1189 (9th Cir.

16  1997), the district court retains jurisdiction in this instance because this circuit has long

17  "recognized an exception to the general rule that a valid notice of appeal divests the district court

18  of jurisdiction over all but tangential matters," when the appeal is patently frivolous.  Marks v.

19  Clarke, 102 F.3d 1012, 1018 n. 8 (9th Cir. 1996), citing Chuman v. Wright, 960 F.2d 104, 105

20  F.2d 104, 105 (9th Cir. 1992) ("frivolous or forfeited appeal does not automatically divest the

21  district court of jurisdiction.").  See also, U. S. v. Powell, 24 F.3d 28 (9th Cir. 1994); U.S. v.

22  LaMere, 951 F.2d 1106, 1108 (9th Cir. 1991); U.S. v. Claiborne, 727 F.2d 842 (9th Cir. 1984).

23  The appeal in this action has not been made pursuant to 28 U.S.C. § 1292 (interlocutory

24  decisions) and is otherwise without merit.  Plaintiff has not appealed from an appealable order

25  (no final order from which to appeal).  Fletcher v. Gagosian, 604 F.2d 637, 638 (9th Cir.1979) (if

26  a district court dismisses less than all claims in an action or fewer than all defendants, such a

1  dismissal is not a final order appealable under 28 U.S.C. § 1291).  A party may appeal "final

2  decisions of the district courts...." 28 U.S.C. § 1291.  "A 'final decision' for purposes of § 1291

3  is a 'decision by the District Court that ends the litigation on the merits and leaves nothing for the

4  court to do but execute the judgment." Duke Energy Trading and Marketing, L.L.C. v. Davis, et

5  al., 267 F.3d 1042, 1048 (9th Cir. 2001), quoting Coopers & Lybrand v. Livesay, 437 U.S. 463,

6  467, 98 S.Ct. 2454 (1978).

7  Second Amended Complaint

8          This action proceeds on the second amended complaint, filed on July 20, 2005, as

9  modified by the Order, filed on September 12, 2006, adopting the Findings and

10  Recommendations, filed on July 12, 2006.[2]  Plaintiff proceeds against defendants Warden Carey,

11  Dr. Traquina, Dr. McIntyre, Dr. Cheung and Correctional Officer (C/O) Cervantes.  Plaintiff

12  proceeds against defendant Carey solely in his official capacity for prospective injunctive relief.

13  Plaintiff is proceeding on his claims against defendants under the First and Eighth Amendments

14  and any supplemental state law negligence claim.

15          On July 22, 2003, plaintiff submitted a medical request form to the dentist's

16  office, complaining of pain in his jaw, pain in his teeth near the site of an extraction, an inability

17  to eat or sleep properly, and expressing concern that the condition would become serious and

18  inoperable.  Second Amended Complaint (SAC), p. 2.  On August 5, 2003, plaintiff received

19  notice from the medical department that his name was being placed on a waiting list.  SAC, pp.

20  2-3 & Exhibit 2 (to SAC).  On October 15, 2003, plaintiff filed an administrative appeal with the

21  dentist's office complaining of delay in medical treatment.  Id., at 3.  On November 15, 2003,

22  plaintiff filed another medical request form with the dental office, reiterating his request of July

23  22, 2003.  Id.

24

25          [2] In the 9/12/06, Order, plaintiff's claims of fraud and conspiracy were dismissed, as well
   as were his claims pursuant to 42 U.S.C. § 1985 and Cal. Code § 52.1.  In addition, defendant
26  Carey was dismissed as a defendant in his individual capacity only.

On November 17, 2003, plaintiff filed another administrative appeal that concerned the dental office for delay of medical treatment, which included a request to defendant Cervantes that he assign a log number to the new appeal, plaintiff's original grievance not having been returned, and requesting that the new appeal be processed.  Id. & Exhibits 1 and 3.  Plaintiff believes defendant Cervantes read the appeal and attached note and was aware that plaintiff was claiming a serious medical need which might result in "irreparable damage."  Id.

On November 19, 2003, defendant Cervantes returned the 11/17/03 appeal to plaintiff with instructions to send it for informal review directly to the dental clinic.  Id.  Plaintiff alleges that "when circumstances are such that regular appeal time limits may" pose a risk to an inmate's safety "or cause other serious and irreparable harm, the appeal shall be processed at the second level and completed within five days."  SAC, p. 4.  On November 20, 2003, plaintiff re-submitted his appeal to the appeals coordinator, defendant Cervantes, reminding him that plaintiff's earlier attempt for a response at the informal level from the dental clinic had failed, asking again that the appeal be logged and processed properly, asserting that the appeal concerned a serious medical condition which delay was making worse, and asking defendant Cervantes not to prevent him from receiving treatment.  Id. & Exhibit 4.

On November 23, 2003, plaintiff received notice from the dental clinic that his second request for dental care had been received and that his name was being placed on a waiting list for dental treatment in chronological order.  Id. & Exhibit 2.  The following day plaintiff filed a State Board of Control claim.  Id. & Exhibit 5.

On November 26, 2003, plaintiff's 11/17/03 appeal was once again returned to him by defendant Cervantes with the following notation: "Try this, send 602 directly to medical appeals analyst at primary clinic.  Your 602 will be tracked by medical appeals analyst"; plaintiff did as he was instructed.  SAC, pp. 4-5 & Exhibit 6.  Plaintiff sent the appeal as instructed on November 30, 2003.  Id., at 5 & Exhibit 7.

\\\\\\

On December 7, 2003, plaintiff sought a copy of a memorandum setting forth the wait times for medical care at CSP-Solano.[3]  Id.  Plaintiff obtained a memorandum of medical care waiting periods, dated December 10, 2003, and signed by defendant CMO[4] Traquina.  Id., & Exhibit 8.  On December 19, 2003, plaintiff's appeal was partially granted at the informal level with the result that his name was placed on a waiting list and plaintiff was to be seen in chronological order.  Id. & Exhibit 1.  That same day, plaintiff returned the appeal to the medical appeals analyst for first level review, as defendant Cervantes had instructed that the appeal would be tracked by the medical appeals analyst.  Id.  The appeal was returned on December 29, 2003, with a screening form indicating that plaintiff needed to send it on to the regular inmate appeals office for a log number, after which that office would forward the appeal to the medical appeals analyst for first level review; plaintiff did as instructed that same day.  SAC, at 5-6 & Exhibit 9.

On January 3, 2004, the appeal was returned to plaintiff with a screening form indicating that he had to wait seven days before submitting the appeal because he had already submitted an appeal on December 29th.  SAC, at 6 & Exhibit 10.  Plaintiff immediately returned the appeal for processing and complained of the delay.  Id. & Exhibit 11.

On January 6th and 7th, 2004, plaintiff enlisted the help of non-defendant Housing Officer Walker, to receive attention for his serious dental problem, and Officer Walker apparently called the dental office on both days.  Id. & Exhibit 12.  On January 8, 2004, plaintiff received notice that his 11/17/03 appeal had been given a log number, CSP-S-04-00040, and would be processed at the first formal level in the medical department.  Id.

On February 3, 2004, not having received any response, plaintiff, threatening to sue, again sought the assistance of Officer Walker, who called the dentist's office a third time, at about 11:30 a.m..  SAC, at 7.  After the third call, Walker wrote plaintiff a pass for 12:30 p.m.

---

[3] California State Prison-Solano in Vacaville.

[4] Chief Medical Officer.

1  that same day to the dental clinic for triage.  Id. & Exhibit 13.

2         Defendant Cheung interviewed and examined plaintiff, on February 3, 2004, and

3  stated that he was scheduling a dental appointment.  Id.   Thereafter, on February 6, 2004,

4  plaintiff was escorted for a dental examination by defendant Cheung, who "took a complete set

5  of x-rays of plaintiff's teeth, including the hinge area of the jaw," told plaintiff that his receding

6  gum line was due to the many years of tooth brushing and the migration of his teeth on either

7  side of a tooth extraction site; defendant said there was no other dental problem.  Id., at 7-8.

8  Defendant Cheung conceded that a one-tooth partial or bridge would solve plaintiff's problems

9  with his teeth and jaw, but averred that the state would not pay for a bridge.  Id., at 8.

10         Plaintiff explained that the hinge of his jaw was loose and his jaw muscles were

11  weak and that the pain in his jaw caused his fear that he was developing cancer or an otherwise

12  irreparable problem.  Id.  Defendant Cheung said he would put plaintiff's name on a waiting list

13  to see an oral surgeon with whom plaintiff should discuss his jaw problems.  Id.  Plaintiff asked

14  defendant Cheung to remove a sharp point in a tooth that kept cutting his tongue; defendant used

15  a power tool to smooth away the point.  Id.  Defendant Cheung ended the appointment with the

16  advice that rubbing toothpaste on his teeth with his fingers would dull plaintiff's pain.  Id.

17         Plaintiff was examined, on February 17, 2004, by an oral surgeon, Dr. Jennings,

18  not a defendant, who found plaintiff's teeth and gums to be in good condition with no obvious

19  problems, but diagnosed plaintiff as having TMJ[5] and prescribed an exercise to cure the problem,

20  telling plaintiff how to do the exercise(s) and when (each morning and evening for ten seconds).

21  Id., at 9.  When plaintiff asked, Dr. Jennings informed him that doing the prescribed exercises

22  would have prevented the TMJ.  Id.  Plaintiff alleges that denial of dental care can lead to loss of

23  teeth, loss of bone density, deformity, infection and even death.  Id. & Exhibit 14.

24  \\\\\

25

26         [5] Temporomandibular Joint Dysfunction.

1    Defendant McIntyre, on March 5, 2004, partially granted plaintiff's

2   11/17/03 appeal at the first formal level, stating that plaintiff had been seen by a doctor.  Id. &

3   Exhibit 15.  On April 4, 2004, plaintiff submitted a medical request form for dental care.  SAC,

4   at 10.  On April 8, 2004, defendant Traquina granted the 11/17/03 appeal in full at the second

5   formal level, stating that plaintiff's medical problems were being treated.  Id. & Exhibit 16.

6    On April 25, 2004, plaintiff filed an appeal, requesting the dental care defendant

7   Traquina stated that plaintiff was, or was to be, receiving.  Id.  On May 10, 2004, plaintiff's

8   appeal was returned, informing plaintiff that his name was not on the dental care waiting list.  Id.

9   & Exhibit 17.

10    On June 1, 2004, N. Grannis, Chief of Inmate Appeals (not a defendant), refused

11   to review the 11/17/03 appeal at the third or director's level, which is required by the State Board

12   of Control.  SAC, at 10 & Exhibit 18.[6]  On June 11, 2004, plaintiff received acknowledgment of

13   his complaint (about defendant Traquina and his alleged denial of dental care for plaintiff)

14   having been filed with the state medical board; on June 14, 2004, plaintiff was informed in a

15   notice from the medical board that his complaint did not come within the board's jurisdiction,

16   but that his complaint would be forwarded to Dept. of Corrections Health Care Servs. Div.  Id. &

17   Exhibits 19 and 20.

18    On July 1, 2004, plaintiff filed a CDC Form 7362 medical request seeking dental

19   care; on July 14, 2004, plaintiff received a "dental receipt" for the form.  SAC, at 11 & Exhibit

20   21.  On August 13, 2004,[7] plaintiff filed another request for dental care on a CDC Form 7362; on

21   the same day, he was informed that he was already on the waiting list.  Id. & Exhibit 22.

22    Defendant Carey is, and has been, aware of the medical department's

23   unconstitutional policy of denying inmates medical care but fails to rectify it, despite his power

24   _____

25       [6] Plaintiff's exhibit indicates that the appeal was returned because it had been granted by the institution and there was nothing to be reviewed.

26       [7] The form itself indicates that the request was made on August 3, 2004.

and legal duty to do so.  Id.  Defendant Carey's failure to prevent a policy of denial or delay of

medical care to plaintiff constituted deliberate indifference to plaintiff's serious medical

condition in violation of the Eighth Amendment and his due process rights under the Fourteenth

Amendment; in failing to ameliorate the policy, Carey has ratified the conduct of the other

defendants.  SAC, at 11-12.  Defendant Carey's failure to prevent the unconstitutional medical

care policy amounted to negligence under state law and violated plaintiff's rights under the state

constitution.  SAC, at 12.  Defendant Carey knew his failure to prevent the policy of denied or

delayed medical care violated plaintiff's state and federal rights and state and federal laws.  SAC,

at 12 & Exhibits 23 and 24.[8]

Plaintiff alleges that all defendants delayed or denied medical care to prisoners.  Id.

Plaintiff alleges that defendant Cervantes violated state and federal laws by, in essence,

practicing medicine without a license, misdirecting appeals and using his own judgment to assess

the seriousness of plaintiff's medical condition.  SAC, at 13.  Defendants Traquina, McIntyre,

Cheung and Cervantes were deliberately indifferent to plaintiff's serious medical condition in

violation of the Eighth Amendment and of his due process rights under the Fourteenth

Amendment, as well as state law, and were aware of violating plaintiff's rights.  Id.  Defendants

violated plaintiff's rights under the state constitution, and were negligent under state law;

defendants knew that the unconstitutional policy of delayed or denied medical care caused pain

and suffering to plaintiff.  SAC, at 14.  Defendants knew or should have known that their denied

or delayed medical care could lead to irreparable physical damage to plaintiff; defendants

disregarded a substantial risk of serious harm to plaintiff.  Id.  Defendants relied on untrained

staff to determine the seriousness of plaintiff's condition.  Id.  Defendants' delay in processing

his medical appeals denied his needed medical care.  Id., at 14-15.  Defendants also retaliated

---

[8] These two incomplete documents, which appear to be the partial declarations of two
inmates, other than plaintiff, complaining of the dental care, or lack thereof, they received at
CSP- Solano, must be disregarded/stricken because they are partial, unsigned and lack any
foundation or authentication.

against him by denying medical care because he filed an appeal against dental staff.  SAC, at 16.

Defendants' delay in processing his appeals violated his First Amendment right of access to the

courts and his due process rights.  Id.  Defendant fears further retaliation from the filing of this

lawsuit.  SAC, at 17.

Plaintiff seeks declaratory and injunctive relief as well as money damages.  SAC,

at 19-21.  As to the declaratory relief plaintiff seeks, plaintiff asks the court to issue a judgment

that the defendants' delay of the appeal process violated, inter alia, his due process rights; that the

actions of defendants in failing to provide adequate medical care for plaintiff violated, and

continues to violate, plaintiff's rights under the Eighth Amendment; that defendants retaliated

against plaintiff for using the appeal process and violated his right to equal protection; that the

policy of requiring inmates to wait for months for medical care, promulgated by defendant

Traquina and enforced by all defendants, is an unconstitutional policy.  As to the injunctive relief

he seeks, plaintiff asks the court to order prison officials to improve in-house staffing and

procedures for the dental department; that the waiting period to receive dental care not exceed

thirty days; that dental staff provide proper, effective treatment for pain for any inmate

complaining of dental pain in light of diagnosed dental problems; that references to his medical

appeals and this lawsuit be removed from plaintiff's prison files.  SAC, pp. 20-21.  Plaintiff

seeks both unspecified compensatory and punitive damages against all defendants; as noted,

however, defendant Carey has been dismissed from this action in his individual capacity.

Standing

The court construes plaintiff's requests for injunctive relief as seeking timely and

appropriate dental care for himself as plaintiff has no standing to bring this action on behalf of

any other inmate.  Halet v. Wend Inv. Co., 672 F.2d 1305, 1308 (9th Cir. 1982) (party must

assert [his] own rights not those of third parties), citing Duke Power Co. v. Carolina

Environmental Study Group, 438 U.S. 59, 80, 98 S. Ct. 2620, 2634 (1978); Warth v. Seldin, 422

U.S. 490, 499, 95 S. Ct. 2197, 2205 (1974).  Further, plaintiff, a non-lawyer, does not proceed

herein in a class action.  Plaintiff's privilege to appear in propria persona is a "privilege ...

personal to him.  He has no authority to appear as an attorney for others than himself."  McShane

v. U. S., 366 F.2d 286, 288 (9th Cir.1966), citing Russell v.United States, 308 F.2d 78, 79 (9th

Cir. 1962); Collins v. O'Brien, 93 U.S. App. D.C. 152, 208 F.2d 44, 45 (1953), cert. denied, 347

U.S. 944, 74 S. Ct. 640 (1954).

 Motion for Sanctions

Plaintiff moves for unspecified sanctions, contending that defendants have not

acted in good faith with respect to producing sick call request sheets (CDC Form 7263) from

January 1, 1998, to the date of his production request, which was on February 5, 2005.  Motion

for Sanctions (Mtn.), pp. 1-2.  The initial response to plaintiff's request, on April 7, 2005, was an

objection based on the ground that plaintiff's medical file was equally available to him for

copying and inspection.  Mtn., p. 2; Opposition (Opp.), p. 2.  From April 25, 2005, through June

21, 2005, plaintiff and defense counsel corresponded, seeking to resolve the issue informally.

Mtn., pp. 2-4; Opp., p. 2.  Plaintiff explained that he had never been able to find any CDC Form

7263 sick call requests in his medical file; defendants' counsel responded that the 7263 medical

request form currently is to be placed in an inmate's medical file, including requests for dental

care.  Mtn., pp. 2-3; Opp., p. 2.  Counsel, however, also stated that dental care request forms in

the past were not always included in the medical file and that they may not exist any longer,

saying that he would ask the institution to conduct another search to see if they could be located.

Mtn., p. 3.  In response, plaintiff expressed concern that prior medical request forms might have

been removed from his medical file, to which defendants' counsel responded, saying that the

"sheer number" of requests led to the practice of not keeping such forms beyond the day they

were used as their purpose was basically to reserve a medical or dental appointment.  Mtn., p. 3;

Opp., p. 2.  Counsel went on to re-assert that the more current practice, as of some unspecified

time in 2005, became to retain the requests in the medical file of an inmate and stated again that

he would ask for another search for the dental request forms to be conducted at the prison.  Id.

1          As defendants note, on September 14, 2005, plaintiff filed a motion to compel,[9]

2   asking the court to compel defendants to produce, inter alia, his sick call sheets or medical

3   request forms from January 1, 1998, through the present, to which defendants filed their

4   opposition, stating that prior sick call sheets were discarded but current sheets were retained in

5   inmate medical files.  Opp., p. 2.  By Order, filed on July 12, 2006, the court granted plaintiff's

6   motion as to this request, ordering defendants to specify the date upon which the practice of

7   destroying sick call sheets was discontinued and to provide proof thereof to plaintiff.  See Order,

8   filed on 7/12/06, pp. 22, 31.  Moreover, defendants were ordered to provide plaintiff with a copy

9   of any medical request form submitted by plaintiff on or after July 22, 2003, and to provide the

10  court with proof of service thereof.  Id.  Defendants aver that, on August 22, 2006, plaintiff was

11  provided with the sick call sheets currently in his medical file along with a declaration from a

12  prison official explaining the past practice with regard to the sick call sheets.  Opp., p. 3,

13  referencing docket entry # 78.

14          Defendants' amended response to the request at issue was:

15          Defendants do not have any responsive documents from January,
            1998, through November 2005, because the institution did not
16          retain the CDC 7362 forms in the inmate's respective medical file
            until December 2005.  Defendants are producing all CDC 7362
17          forms submitted by plaintiff after November 2005.  (See
            Attachment A, Declaration of L. Mefford; and, Attachment B,
18          CDC 7362 forms filed by inmate Brooks after December 2005.

19  Mtn., Exhibit (Exh.) B, p. 23.

20          In the Medford declaration, a Correctional Health Services Administrator at CSP-

21  Solano stated, inter alia, the following:

22          CDC 7263 forms were not kept in the inmate's medical files until
            December 2005.  Before this period, the forms were kept in boxes
23          in a CDCR storage facility.  Unfortunately, these forms were

24  ──────────────

[9] Plaintiff also outlines his efforts by way of administrative grievance to be permitted an
25  adequate review of his medical files, so that he could locate the documents he was repeatedly
    told were in his files.  Mtn., p. 4.  Evidently, even when the appeal was granted, plaintiff was not
26  informed of the time which had supposedly been set for the review.  Id.

1   accidentally destroyed in 2005, because the boxes they were in
2   were mis-marked and labeled to be destroyed.

3   Plaintiff complains that he had repeatedly sought the requested documents

4   through discovery, which requests defendants had repeatedly denied, and that even after the court

5   ordered production, defendants delayed or denied access to the documents at issue.  Mtn., p. 5.

6   Plaintiff states that the destroyed documents would have demonstrated "how often and how

7   desperately the plaintiff had tried to obtain medical care for the pain and suffering he was forced

8   to endure."  Id.   He avers that defendants did not inform the court in their opposition to the

9   motion to compel that the documents had been destroyed in December of 2005, and that

10  defendants had ten months to secure the documents, but chose instead to deny they existed and

11  kept them from plaintiff.  Id.

12  It is not clear to the court how plaintiff concludes that the documents were

13  destroyed in December of 2005, the response only indicates that the sick call forms were not kept

14  on the individual inmate medical files until December, 2005.  Moreover, the response to the

15  motion to compel was filed on November 18, 2005, and defendants could not have made any

16  representation as to what occurred at a date not yet reached at that point.

17  Defendants' counsel recounts a somewhat murky history of the practice of the

18  prison with respect to sick call request forms.  Apparently, the institution informed defense

19  counsel that prior to 2005, the forms were not retained at all once submitted.  At some undefined

20  time in 2005, and for some unspecified reason, the practice changed and the prison began to

21  retain the sick call request forms in a storage facility (although, the court concludes, evidently,

22  not in well-organized fashion, given what is supposed to have happened to them).  Opp., p. 2.

23  Thereafter, the forms which had begun to be stored only some time in 2005 were inadvertently

24  destroyed because they were in boxes that were mis-marked and labeled for destruction.  Finally,

25  in a third change of practice, in December, 2005, the medical request forms began to be placed

26  directly into inmate medical files.  Id.

1        Taken at their word then, there was no consistently maintained record of any of

2  plaintiff's sick call requests, or those of any other CSP-Solano inmate, prior to 2005, and as to

3  the ones that were begun to be stored as of some time in 2005, they were destroyed by mistake,

4  evidently at some other unspecified point in 2005; as of December of 2005, they were placed in

5  inmate's medical files.  Defendants contend that they had no duty to maintain medical files and

6  no involvement in the prison's practice of discarding the medical request forms.  Opp., p. 3.

7        While the court understands plaintiff's frustration, and the explanation

8  for the variable, vague and seemingly ever-changing custom of the prison with regard to these

9  requests is less than satisfactory, there is no substantial evidence of bad faith on the part of the

10  defendants or their counsel.  Moreover, prison officials are entitled to some leeway in their

11  manner of prison administration; they should not be unnecessarily hamstrung by courts in the

12  decisions they make with regard to record-keeping generally.  "[F]ederal courts must remember

13  that the duty to protect inmates' constitutional rights does not confer the power to manage

14  prisons or the capacity to second-guess prison administrators, for which we are ill-equipped."

15  Bruce v. Ylst, 351 F.3d 1283 (2003), quoting Touissant v. McCarthy (Touissant IV), 801 F.2d

16  1080, 1086 (9th Cir.1986).  "[T]he relief ordered by federal courts must be consistent with the

17  policy of *minimum intrusion into the affairs of state prison administration*."  Id. (emphasis added

18  in Bruce, supra).

19        Plaintiff is not clear as to what form he would like any sanctions to take.  While

20  defendants did not act in evident bad faith, the failure to discover or disclose the information in a

21  more timely fashion, that the request forms sought had been destroyed, is somewhat troubling.  It

22  is less clear whether or not defendants should haven taken any steps whatever to secure the forms

23  prior to their obliteration (or, as plaintiff seems to suggest, spoliation).  However, given that

24  "[f]ederal courts should not, in the name of the Constitution, become enmeshed in the minutiae

25  of prison operations," Touissant, supra, 801 F.2d at 1086, the court will not, pursuant to Fed. R.

26  Civ. P. 37(c)(1) and (b)(2), impose sanctions upon the defendants in this instance.  However, in

13

1   the pending motion for summary judgment, defendants will not be permitted to set forth as an

2   undisputed fact that plaintiff did not submit sick call request forms in the period up to December

3   2005, related to his need for dental care, should they have sought to do so.  Moreover, the court

4   will accept plaintiff's testimony that he made multiple requests for dental treatment during the

5   period from July 2003, until December 2005, the time during which defendants concede the

6   prison either did not maintain records of request forms or for which the records of request forms

7   have been destroyed, should plaintiff raise the issue in his opposition to the motion for summary

8   judgment.  To the extent that the issue of repeated sick requests for which there is no record may

9   be material, it may become a disputed issue of fact.  However, plaintiff's  motion for unspecified

10  sanctions is denied without prejudice.

11  Motion for Summary Judgment

12          Defendants move for summary judgment under Fed. R. Civ. P. 56, on the

13  following grounds: 1) all defendants were not deliberately indifferent to plaintiff's medical

14  needs; 2) plaintiff cannot establish a viable First Amendment claim because defendants did not

15  retaliate against him for engaging in protected conduct; 3) defendant Traquina is not liable to

16  plaintiff for his role in the inmate appeals process; and 4) plaintiff's negligence claim must fail

17  because neither defendants Taquina or McIntyre caused him to wait for a dental appointment, and

18  he cannot produce any expert opinion that a one-tooth partial is necessary for his medical

19  condition.  Motion for Summary Judgment (MSJ), pp. 1-2.

20          *Legal Standard for Summary Judgment*

21          Summary judgment is appropriate when it is demonstrated that the standard set

22  forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . .

23  there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment

24  as a matter of law."  Fed. R. Civ. P. 56(c).

25          Under summary judgment practice, the moving party

26          always bears the initial responsibility of informing the district court

14

> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986).  "[W]here the

nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.  "[A] complete

failure of proof concerning an essential element of the nonmoving party's case necessarily

renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be

granted, "so long as whatever is before the district court demonstrates that the standard for entry

of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at 2553.

        If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.  See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

(1986).  In attempting to establish the existence of this factual dispute, the opposing party may

not rely upon the allegations or denials of its pleadings but is required to tender evidence of

specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

material, i.e., a fact that might affect the outcome of the suit under the governing law, see

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

1    nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

2              In the endeavor to establish the existence of a factual dispute, the opposing party

3    need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

4    claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

5    versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

6    judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

7    genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

8    56(e) advisory committee's note on 1963 amendments).

9              In resolving the summary judgment motion, the court examines the pleadings,

10   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

11   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

12   477 U.S. at 255, 106 S. Ct. at 2513.  All reasonable inferences that may be drawn from the facts

13   placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S.

14   at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the

15   opposing party's obligation to produce a factual predicate from which the inference may be

16   drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

17   aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

18   party "must do more than simply show that there is some metaphysical doubt as to the material

19   facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

20   nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct.

21   1356 (citation omitted).

22             On November 23, 2004, the court advised plaintiff of the requirements for

23   opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

24   Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and

25   Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

26   \\\\\

*Undisputed Facts*

   The following are the facts that are undisputed.[10]  1. Plaintiff was incarcerated throughout the relevant period at CSP Solano.  2. On July 22, 2003, plaintiff submitted a dental appointment request form to the medical office seeking dental care.  3.  Plaintiff was notified, on July 25, 2003, that his request for dental care had been received and that it would be several months until he would be seen by a dentist.  4. The order in which inmates are seen is controlled by the CAL. CODE REGS. tit.xv, § 3354.  In following Title 15 (xv), it is the prison's practice to place inmates with routine dental needs on a waiting list to be seen in chronological order.  The dental clinic provides health care services to over 6,000 inmates, and it can take up to seven months until an inmate is seen by a dentist.  Inmates needing urgent care would need to notify correctional staff who would inform the clinic.  Generally, inmates requiring urgent dental care would be seen within 24 hours.  5. Plaintiff filed an inmate appeal form on November 17, 2003, regarding his unanswered request for dental care.  7. Plaintiff contacted defendant Cervantes and informed him that he had tried to resolve the issue at the informal level by sending his complaint directly to "the dentist," but had not received a response.  8. Defendant Cervantes suggested that plaintiff contact the medical appeals analyst (MAA), where his appeal would be properly tracked.  9. On December 1, 2003, plaintiff filed a claim with the State Board of Control, claiming that he requested medical care for pain in his jaw from July to November 2003, and did not receive any treatment.  Plaintiff names defendants McIntyre (Chief Dentist) and Traquina (Chief Medical Officer) as being negligent and deliberately indifferent to his medical needs.[11]  10.  On December

---

[10] The facts are numbered as defendants have numbered their "undisputed facts"; however, to the extent that plaintiff does take issue with any portion of them, only so much of an "undisputed fact" that is not expressly disputed by plaintiff is set forth as undisputed or insofar as an exhibit cited in support of the "fact" lends itself to a different characterization, it is modified to be fully undisputed.  Of course, if a "fact" is entirely in dispute, it is not included in this portion.

[11] Exh. C to MSJ, authenticated copy of plaintiff's Board of Control Claim form. Plaintiff does not challenge the fact of his filing of the Board of Control claim but maintains that defendants have made an incomplete statement as to what was set forth in the claim form,

5, 2003, plaintiff's appeal was partially granted at the informal level because plaintiff's name was already on the waiting list for routine dental care.  It was explained to plaintiff that his name was already on the waiting list for routine dental care and that it may take approximately seven months to be seen by a dentist.  Plaintiff was told, if he felt he was experiencing a dental emergency, to have a correctional officer notify the dental clinic staff for an urgent care appointment.  Plaintiff then filed a formal level appeal on December 19, 2003, *stating he did not know if his condition was urgent*.  11.  On January 2, 2004, plaintiff filed an appeal within seven days of a prior appeal.  Because an inmate can only file one appeal every seven days, plaintiff's appeal was rejected and he was told to wait until seven days had passed.  13.  Plaintiff was triaged by defendant Dr. Cheung, a CSP-Solano staff dentist, on February 3, 2004.  Plaintiff complained about gum area sensitivity on tooth number 20, a sharp edge on tooth number two, and left-sided jaw pain.  Plaintiff was scheduled for a follow-up appointment on February 6, 2004, where defendant Cheung examined plaintiff, smoothed out the sharp edge on his tooth, and referred plaintiff to an oral surgeon to determine the source of the jaw pain.  14.  On February 17, 2004, plaintiff was evaluated by Dr. Jennings, an oral surgeon contracted by CSP-Solano (and not a defendant).  Dr. Jennings diagnosed plaintiff as having temporomandibular joint disorder. Temporomandibular joint disorder (TMD) is an acute or chronic inflammation of the temporomandibular joint (TMJ), which connects the lower jaw to the skull.  15.  In most situations where a person has been diagnosed with TMD, surgical intervention is not beneficial. Rather, the symptoms are treated with jaw exercises or pain medication.  In this case, Dr. Jennings determined that medication was not necessary and suggested regimented movement of the jaw joint (exercise) to improve the TMJ condition.  16.  On April 8, 2004, defendant Dr. Traquina responded to plaintiff's appeal (Log # 04-00040).  Defendant Traquina granted the

rendering the characterization "wrong and misleading."  Plaintiff's response (Resp.) to Defendants' Undisputed Facts (DUF), p. 2.  The court's review of the authenticated Board claim form plaintiff submitted reveals that, while abbreviated, defendants' representation is not inaccurate and will deem this fact undisputed.

appeal and noted that plaintiff had been seen by Dr. Jennings on February 6, 2004, and that Dr.
Jennings had chosen a specific method of treatment (jaw exercises).  Defendant Traquina asked
that plaintiff follow the jaw exercises and wait until his followup appointment with Dr. Jennings
so that the next evaluation would permit Dr. Jennings to adequately address plaintiff's health
concerns.  17.  Plaintiff was seen again by Dr. Jennings on January 21, 2005.  Dr. Jennings noted
that plaintiff was benefitting from his TMJ exercises and opined that no additional treatment was
necessary.[12]

As to plaintiff's own statement of undisputed facts (PUF), defendants concede as
undisputed in their reply only the following: PUF 3: That, as the Chief Dental Officer, Defendant
McIntyre, is responsible for the routine and urgent dental care of inmates at CSP-Solano.  PUF 7:
That dental treatment is restricted to that treatment which can be completed in 1 hour.[13]  PUF 11:
That defendant Traquina is aware of all appeals concerning medical care.[14]  PUF 15:  That

---

[12]  MSJ, Exhibit (Exh.) A, Declaration of Dr. J. L. Deffenbaugh, currently Chief Dentist
at CSP-Solano and not a party herein (Deffenbaugh Dec.), ¶¶ 1, 10-11, Attachment E,
authenticated copy of dental progress notes, including entry by Dr. Jennings for 1/21/05.
Plaintiff does not dispute that he was seen again by Dr. Jennings on January 21, 2005, or that Dr.
Jennings noted that plaintiff was benefitting from his TMJ exercises; his objection is to the
assertion that Jennings opined that no additional treatment was necessary. Resp. to DUF, p. 2.
The court's review of the entry in the progress notes, dated 1/21/05 by Dr. Jennings, to the extent
that it can be deciphered, indicates that the doctor did believe plaintiff was benefitting from the
TMJ exercises.  The 1/21/05 entry, signed by Dr. Jennings, states, as far as the court can discern:
"Oral surgery - consult - TMJ and related problems - Going good with TMJ Exercise - Suggest
Occlusal - equilibration of # 20 tooth - Perhaps occlusal trauma." Attachment E to MSJ,
Deffenbaugh Dec. Although Dr. Jennings does not expressly state that no additional treatment
was necessary for the TMJ, it could be inferred from the entry that that is Jennings' professional
assessment as the doctor does not plainly note that anything beyond the exercising should be
done as to that condition.  In any event, in order to adequately dispute Deffenbaugh's expert
evaluation of another medical expert's opinion, plaintiff would have to submit a contradictory
expert opinion (see discussion below), which he has not done.  The court will deem this fact
undisputed.

[13]  Defendants concede this fact as "undisputed to the extent that dental treatment refers to
routine dental care."  Reply, p. 4.

[14]  Defendants do not dispute this assertion but object "on the grounds that it is overbroad
and immaterial.  Notwithstanding the objection, defendant Traquina would generally be informed
of all medical related appeals while in the role of Chief Medical Officer."  Reply, p. 6.

defendant Cervantes handles inmate appeals related to medical and dental issues.[15]  PUF 17:

That defendant Cervantes does not have a doctor's license.

*Disputed Facts*

As to defendants' undisputed fact (DUF) 2, plaintiff does not take issue with the

fact that he submitted, on July 22, 2003, a dental appointment request to the medical office but

states that the characterization of the treatment he sought was incomplete (when defendants only

state that he complained of pain in his jaw).[16]  No party submits a copy of the 7/22/03 health

request form at issue but, as this request form falls within the period of time for which this court

has stated that defendants will not be allowed to refute plaintiff's representations (see motion for

sanctions discussion) with respect to the number of medical request forms submitted during this

period, the court here will also credit as undisputed plaintiff's allegation within his complaint

that in his July 22, 2003, medical request form to the dentist's office, he complained of pain in

his jaw, pain in his teeth near the site of an extraction, an inability to eat or sleep properly, and

expressed concern that the condition would become serious and inoperable.  With respect to

DUF 5, plaintiff objects to defendants' assertion that in his November 17, 2003, appeal he asked

to be seen by a dentist in a matter of weeks, not months.  In his grievance, he complains of being

kept waiting for months, since his initial request (rather than weeks), when he complained of

pain and a possible serious condition, and asks that he not be kept waiting for months and be

started on an annual treatment plan.[17]

\\\\\

---

[15]  Defendants concede the statement as undisputed with the caveat that, as appeals coordinator, Cervantes handles appeals regarding various issues, "including general medical and dental."  Reply, p. 8.

[16]  Even the declaration by Dr. Deffenbaugh, currently Chief Dentist at CSP-Solano, submitted by defendants in support of their motion, states that the request complained "of pain in his jaw and teeth."  Deffenbaugh Dec., ¶ 4.

[17]  MSJ, Exh. A, Deffenbaugh Dec., Attachment C, authenticated copy of 11/17/03 grievance; see also, Defendant Cervantes' Dec., Attachment A.

In DUF # 6, defendants assert the type of complaint set forth in the 11/17/03 grievance must be addressed at the informal level with the dental clinic before it can be addressed at the first level of review, and that plaintiff failed to comply with this guideline and the Appeals Coordinator (defendant Cervantes) returned the appeal to plaintiff with instructions to file his appeal directly to the dental clinic.  MSJ, Exh. B, defendant Cervantes' Dec. ¶ 8. Plaintiff takes issue with how defendant Cervantes' characterizes that appeal, averring that defendant should have treated it as an emergency appeal.  Resp. to DUF, pp. 1-2.

In DUF # 12, defendants state that plaintiff claims that on February 3, 2004, he told his housing officer that he had a serious medical condition and needed to see a dentist. Defendants refer solely to plaintiff's second amended complaint, 3: 1-10, as support for this statement, but plaintiff challenges it as incomplete on the ground that defendants have not set forth what occurred in conjunction with the request and did not mention his two prior requests, on January 6, 2004, and on January 7, 2004.  Opposition (Opp.), pp. 10-11, citing an affidavit from an inmate Willis Jones, signed under penalty of perjury, who declares that he witnessed plaintiff asking Officer Walker on 1/6/04 to contact the clinic for an emergency dental appointment and who states he heard Walker tell plaintiff, on 1/7/04, that he had done so and said he would do so again on 1/7/04.  Neither party has submitted an affidavit from Officer Walker which would clarify whether or not he actually did call the clinic to arrange an emergency dental appointment on 1/6/04 and/or 1/7/04.  If he did, the question becomes why plaintiff would not have been seen upon the earlier contacts.  Thus, it is disputed as to whether or not a contact was made with the dental clinic via Officer Walker prior to his undisputed contact on 2/3/04.

Finally, as to DUF # 18, defendants assert that plaintiff contends that he needs a one-tooth partial to replace the missing tooth.  The dental department does not provide dental implants or bridges, as a matter of course.  If an inmate has eight or more functioning posterior teeth, the inmate would not qualify for a partial and is considered by the Departmental

1   Operations Manual (DOM) to have functional use of his teeth. A one-tooth partial for an inmate

2   with eight or more posterior teeth would be considered cosmetic.  Cosmetic dental work is not

3   provided as it is not mandated by the DOM, nor required to prevent pain. DOM section 54050, et

4   seq.  Plaintiff has more than eight functioning teeth and does not meet the criteria for a partial or

5   denture.  MSJ, Deffenbaugh Dec. 4: 3-11 (¶ 12).  Plaintiff takes issue with these representations,

6   stating that cosmetic dental work such as a one-tooth partial is not prohibited by the DOM, but

7   rather left to the dentist's discretion or judgment.  Plaintiff argues that "cosmetic surgery" is a

8   term used in relation to anterior teeth and that the DOM permits cosmetic dental work for such

9   teeth.  Further, plaintiff contends that while a one-tooth partial may have helped him with his

10  dental problems, that he was nevertheless seeking treatment for more than one missing tooth and

11  to limit his request for dental care to such a request is not accurate.  He maintains that he asked to

12  have his teeth repaired, for the pain in his jaw, head and teeth, the ringing in his ears and his

13  sleeping and eating difficulties to be treated.  Resp. to DUF, pp. 2-3.  The court observes that

14  defendants do not state that the DOM prohibits cosmetic dental work but, rather, that it does not

15  mandate it.  Plaintiff does not make clear on what basis he reaches the conclusion that cosmetic

16  surgery refers only to anterior teeth.  He appears to challenge the regulations as set forth in the

17  DOM stating that they "create a policy that prevents dental staff from performing treatment

18  which will prevent or cure dental problems."  Opp., p. 14.  On the other hand, he notes that under

19  DOM § 54050.19,[18] cosmetic surgery can be performed if "there are important underlying

20  considerations or serious psychological impact."  Id.  Plaintiff's main claim, however, with

21  regard to his missing tooth is that that one missing tooth on the side of his jaw prevents him from

22  eating on that side of his mouth, not allowing him to build strength on that side, a circumstance

23

24      [18] "Oral surgery may be provided to correct a substantial defect or if an existing
     pathological process will threaten the well being of an inmate over a period of time.  Cosmetic or
25   elective surgery shall not be undertaken unless there are important underlying considerations or
     serious psychological impact.  The extraction of asymptomatic teeth may be considered to be an
26   elective procedure." DOM, § 54050.19, as appearing on the website for the California
     Department of Corrections and Rehabilitation.

1   which, he avers, led to his TMJ condition.  Id.

2          Plaintiff has set forth his own disputed facts, for which he does not cite to any

3   record, which largely echo the allegations of his complaint, i.e., that untrained custody staff

4   determine prisoners' dental needs, that defendant McIntyre relies on untrained staff to determine

5   when a prisoner needs urgent or emergency care; that plaintiff should have been treated as having

6   an emergency or urgent condition; that defendants delayed plaintiff's dental treatment because he

7   had filed an inmate appeal concerning medical staff; that defendant Cervantes delayed and

8   misdirected plaintiff's appeal in returning it to him instead of forwarding it to the medical

9   appeals analyst as he was required to do; that defendant Cheung knew plaintiff was complaining

10  of severe pain; that defendant Cervantes decided the validity of medical claims in inmate

11  appeals; that when an appeal is granted in full, that every request is to be performed; that

12  defendant Traquina delegated to defendants authority to make decisions on his behalf regarding

13  plaintiff's medical needs; that defendant Traquina authorized clinic appointment wait times and

14  relied on untrained custody staff to relay medical requests and complaints to the medical or

15  dental clinic; that the medical care waiting period constitutes an unconstitutional policy; that the

16  dental department has a policy that prevents dental staff from fulfilling their duties if a posterior

17  dental prosthesis is warranted; that plaintiff has not been treated as others with similar problems,

18  nor do other prisoners have to wait as plaintiff does for their names to come to the top of the

19  waiting list for routine dental care; that defendants were negligent and violated plaintiff's rights

20  under the federal constitution and state law in their treatment of him.  Plaintiff's Statement of

21  Disputed Facts.

22          _Legal Standard for Eighth Amendment Claim_

23          In order to state a § 1983 claim for violation of the Eighth Amendment based on

24  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

25  deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

26  285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

1    serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter,

2    501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

3    1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

4    Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

5            A serious medical need exists if the failure to treat a prisoner's condition could

6    result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

7    that a prisoner has a serious need for medical treatment are the following:  the existence of an

8    injury that a reasonable doctor or patient would find important and worthy of comment or

9    treatment; the presence of a medical condition that significantly affects an individual's daily

10   activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

11   F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

12   (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

13   grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

14           In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

15   defined a very strict standard which a plaintiff must meet in order to establish "deliberate

16   indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

17   However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

18   which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

19   Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

20   should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

21           It is nothing less than recklessness in the criminal sense – subjective standard –

22   disregard of a risk of harm of which the actor is actually aware.  Id. at 838-842, 114 S. Ct. at

23   1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn

24   that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837,

25   114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

26   of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at

847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at 1981.  However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case.  Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant."  McGuckin, 974 F.2d at 1061.

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate

1  indifference.  <u>Hutchinson v. United States</u>, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

2  may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

3  treatment he received equated with deliberate indifference thereby creating a material issue of

4  fact, summary judgment should be entered for defendants.  The dispositive question on this

5  summary judgment motion is ultimately <u>not</u> what was the most appropriate course of treatment

6  for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,

7  criminally reckless.

8       <u>Argument/Discussion – § 1983 Eighth Amendment claims</u>

9       Defendants state that the gravamen of plaintiff's complaint is that 1) defendants

10 violated his constitutional rights in the amount of time it took for him to see a dentist, and 2)

11 defendants violated his constitutional rights by not replacing his lower posterior tooth with a one-

12 tooth partial bridge, neither of which claim, defendants contend, is valid.  MSJ, pp. 6-7.

13 Defendants maintain that a request to be seen by a dentist for dental-related problems is treated

14 appropriately as a request for a routine dental appointment if there is no indication of a dental

15 emergency, so that plaintiff had to wait his turn as would any other inmate.  Defendants contend

16 that only plaintiff could know if he were experiencing a dental emergency and there are

17 provisions that cover that contingency.  Even plaintiff did not know he was experiencing a dental

18 emergency, which he admitted in his formal appeal on December 19, 2003, saying that he was

19 unsure whether his dental condition was urgent.  <u>See</u> Undisputed Fact (UF) 10.  Defendants

20 could not have been expected to know, if plaintiff did not, whether plaintiff needed an urgent

21 appointment.  When, on February 3, 2004, he informed a housing officer that he had an urgent

22 need, he was seen by a dentist on the same day.  MSJ, p. 7.

23      Moreover, according to defendants, no evidence establishes that either defendants

24 Cheung or McIntyre knew that plaintiff's name was on the waiting list before his 2/3/03

25 appointment, and defendants Traquina and Cervantes only became aware of his position on the

26 wait list through the appeal process.  The wait list order is established by Title 15 of the

1   California Code of Regulations, and plaintiff does not show that defendants took any action or

2   lack of same with respect to the amount of time plaintiff waited for a dental appointment.  MSJ,

3   p. 8.

4          Plaintiff states, by way of background apparently, that he initially requested

5   medical care for pain in his jaw, headaches, ringing in his ears, trouble sleeping, and rash and

6   cracking skin on his hand, on August 15, 2002.[19]  Because there is a policy that allows response

7   to only one medical problem at a time, he argues, only his hand rash and skin-cracking problem

8   was treated at that time.  He contends that beginning with his July 22, 2003, request for dental

9   care, wherein he sought treatment for jaw and teeth pain, headaches, ringing in his ears, and

10  trouble sleeping, he submitted no less than eight requests for dental care.  Opp., pp. 2-3; verified

11  second amended complaint (SAC), pp. 2-3, Exh. 2, copies of prison receipts, dated August 5,

12  2003 and November 15, 2003, referencing plaintiff's requests for dental care.[20]

13         Plaintiff contends that, in contravention of Cal. Code Regs. tit.xv, § 3355.1(c),

14  which states that inmates under 50 "shall be examined at least once every two years," and that

15  "[a]ll other inmates shall be examined annually[,]" he was not seen by dental staff from

16  December 1999, until February 3, 2004, a contention unrefuted by defendants in their reply.

17  Opp., p. 3, Exhs. 27-29.  Plaintiff maintains that the language of the regulation is mandatory, not

18  subject to a request by an inmate.  Opp., p. 3.  Plaintiff has also submitted copies of prison

19  receipts of his requests for dental care following his February, 2004, dental examination.[21]  As

20  exhibits to the second amended complaint, plaintiff includes copies of of prison receipts, dated

21  ───────────────

22   [19] Plaintiff includes a copy of the August 15, 2002, medical request form, seeking
    treatment for "pain in jaw - headache - ringing in ears - trouble sleeping - rash/cracking skin on
23   hand." Opp., Exh. 30.

24   [20] In addition, Exh. B to plaintiff's previously denied motion for preliminary injunction
    are the original prison receipts for dental care requests in July, 2003, and another on Nov. 15,
25   2003.

26   [21] SAC, Exhs. 21 & 22, copies of prison receipts, dated July 9, 2004, August 3, 2004 (or
    August 11, 2004), October 16, 2004, of plaintiff's requests for dental care.

July 9, 2004, August 3, 2004 (or August 11, 2004), October 16, 2004, of plaintiff's requests for

dental care, covering a period of time not addressed in defendants' motion. SAC, Exhs. 21 & 22.

In an apparent effort to demonstrate that he has on-going untreated dental problems, plaintiff

submits an unauthenticated[22] copy of an April 7, 2005, medical request form, stating "teeth hurt -

still, I've been trying to get care for over a year and a half - top - left - side rear molar is most

painful[.]" Exh. 31 to Opp.

Referring to responses to requests for admission, nos. 15, 16, 17, that plaintiff

served upon defendant McIntyre, plaintiff contends that the guidelines set forth under Title 15 are

contradicted by the practice of the defendants because defendant McIntyre admitted instructing

staff which prisoners were to be placed on the waiting list, who was to be seen and when, and

when to move one prisoner in front of another, implying an arbitrary decision-making process.

Opp., p. 4.  Plaintiff does not submit the specified responses to which he refers as exhibits.

However, defendants did submit the responses to requests nos. 15 through 17, in their reply,

attached to, and authenticated by, a declaration by defendants' counsel, Christopher Becker, and

plaintiff's representation is not borne out by the responses, wherein in relevant part, defendant

McIntyre states: "defendant admits that while at CSP-Solano, staff were instructed to see the

patients on the waiting list in chronological order, unless it was an immediate, emergency or

urgent situation, as provided by California Code of Regulations, title 15, sections [sic] 3354(f)."[23]

---

[22] Some of the documents posited by plaintiff are unauthenticated but defendants raise no objection on that basis in their reply.

[23] "Dental Sick Call: Routine dental treatment shall not be provided during sick call. Inmates requesting dental treatment shall be evaluated and scheduled into one of the following categories:
(1) Emergency care category: A dental emergency, as determined by health care staff, includes any medical or dental condition for which evaluation and treatment are necessary to prevent death, severe or permanent disability, or to alleviate disabling pain. Immediate treatment shall be provided and will be available to such inmates 24 hours a day, 7 days a week.
(2) Urgent care categories:
    (A) Priority 1A: Inmates requiring treatment of an acute oral or maxillo-facial condition, which is likely to remain acute, worsen, or become life threatening without immediate intervention. Such inmates shall receive treatment within 24 hours of diagnosis and assignment

Reply, p.3, Exh. E to Becker Dec.  The court agrees that plaintiff's characterization of the response is a misrepresentation, and the undersigned finds that plaintiff has not thereby demonstrated that there remains a genuine issue of material fact as to whether or not defendant McIntrye engaged in promulgating a policy of arbitrary placement of prisoners' names on the dental care waiting list.

Plaintiff argues that he did not fit into the prison practice of being placed in chronological order because his was not a routine dental need and his medical records would have so indicated, and that he need not have used the express words "emergency" or "urgent." Opp., p. 4.  The court does not have all of plaintiff's medical records before it, and plaintiff does

---

to Dental Priority 1A.

(B) Priority 1B: Inmates requiring treatment for a sub-acute hard or soft tissue pathology. Such inmates shall receive treatment within 30 days of diagnosis and assignment to Dental Priority 1B.

(C) Priority 1C: Inmates requiring early treatment for any unusual hard or soft tissue pathology. Such inmates shall receive treatment within 60 days of diagnosis and assignment to Dental Priority 1C.

(3) Interceptive care category: Inmates shall have over 6 months remaining to serve on their sentence within the department, and be eligible for Priority 2 care regardless of oral health self-care. Such inmates shall receive treatment within 120 days of diagnosis and assignment to Priority 2 care.

(A) Priority 2A: Inmates requiring advanced caries or advanced periodontal pathology requiring the use of intermediate therapeutic or palliative agents or restorative materials, mechanical debridement, or surgical intervention.

(B) Priority 2B: Edentulous or essential edentulous, or with no posterior teeth in occlusion requiring a complete denture, or one or more missing anterior teeth resulting in the loss of anterior dental arch integrity, requiring a transitional anterior partial denture.

(C) Priority 2C: Moderate or advanced periodontitis requiring non-surgical deep scaling and root planing procedures.

(D) Priority 2D: Chronically symptomatic impacted tooth requiring removal or specialty referral. Surgical procedures for the elimination of pathology, or restoration of essential physiologic relationship.

(4) Routine rehabilitative care category: Inmates shall have over 12 months remaining to serve on their sentence within the department, and shall meet oral health self-care requirements. Such inmates shall receive treatment within one year of diagnosis and assignment to Priority 3 care.

(A) Priority 3A: Inmates requiring a maxillary or mandibular partial denture or both due to insufficient number of posterior teeth to masticate a regular diet.

(B) Priority 3B: Carious or fractured dentition requiring restoration with definitive restorative materials or transitional crowns.

(C) Priority 3C: Gingivitis or mild periodontitis requiring routine prophylaxis.

(D) Priority 3D: Definitive root canal treatment for non-vital, single rooted teeth, which are restorable with available restorative materials." CAL. CODE REGS. tit.xv, §3354(f).

not explicitly set forth how they would have indicated the urgency of his need.  Plaintiff contends also that his repeated requests for help for the pain in his teeth, jaw and head and for his inability to sleep and eat properly should have alerted defendants.  He states that it should be enough that he complained of "severe pain," although he does not adequately explain why, when he was informed on 12/17/03, in response to his appeal of 11/17/03, that his name had been entered for treatment on the list as of 7/25/03, but that it would be several months before his name would come to the top of the routine care list and, therefore, he should have a C/O call the dental annex if he judged that he was having a dental emergency for an urgent care appointment, why he did not do so at that time.  MSJ, Deffenbaugh Dec., Attachment A.  Nor does he explain, if his pain was severe, why he did not unreservedly deem his condition an emergency.[24]

Undisputed fact 4 sets forth that the order in which inmates are seen is controlled by the CAL. CODE REGS. tit.xv, § 3354 and that, following Title 15 (xv), it is the prison's practice to place inmates with routine dental needs on a waiting list to be seen in chronological order; the dental clinic provides health care services to over 6,000 inmates, and it can take up to seven months until an inmate is seen by a dentist; inmates needing urgent care would need to notify correctional staff who would inform the clinic; generally, inmates requiring urgent dental care would be seen within 24 hours.  Plaintiff asserts that defendants do not have enough staff and materials to care for 6,000 inmates, though they are required to do so by law, citing DOM § 54050.5.[25]  He again cites to responses to requests for admission that he does not supply.  In their reply, defendants supply defendant McIntyre's response to plaintiff's request for admission no.

---

[24] Plaintiff's formal level appeal on 12/19/03 stated: "I don't know if it is urgent or not. I'm not a doctor.  Without examination it is not possible to tell if my problem is routine, emergency, or whatever.  But, me [sic] suffering continues due to your policy of non action. What may not be or have been serious may be developing into something which cannot be helped."  MSJ, Deffenbaugh Dec., Attachment C.

[25] "Each dental service site shall have professional and auxiliary staff to meet the needs of the facility.  This staff shall be composed of: • Full-time facility employees. • Part-time facility employees. • Contract employees. • Volunteers.  Policies and Procedures of the Department of these personnel classes shall prevail."  DOM § 54050.5

33, wherein defendant concedes that, at least routine dental treatment is restricted to one hour, and that annual check-ups are not provided routinely at CSP-Solano, stating: "[d]efendant admits that annual check ups are not provided at CSP-Solano unless an inmate requests dental care as provided under 3354(f)." Reply, pp. 4-5, Exh. E to Declaration of Christopher Becker.  Plaintiff avers that defendant Carey has admitted that the dental department is understaffed, citing a response to a request for admission (12), which neither party supplies but for which plaintiff has the burden, which as to that point he fails to meet it, although the court could construe it as telling that defendants do not supply this response, nor dispute the point.  Opp., pp. 5-6. Defendants do not supply other responses on which plaintiff relies and for which the court cannot find that plaintiff has met his burden.

On the other hand, plaintiff has submitted declarations that were signed under penalty of perjury by various inmates largely attesting to the inadequacy of CSP-Solano's dental care.  Floyd Henley, an inmate who states that he attended a Men's Advisory Committee meeting on June 10, 2005, with defendants Warden Carey and CMO Traquina, also declares that defendant Traquina said that there were only three full time dentists for the six dental chairs at that time and that defendant Carey said that regular sick call was taking four to five weeks and only one problem at a time per patient visit was being treated due to the numbers needing treatment and to the doctor shortage.  Exh. 9 to Opp., Henley Dec., dated as signed on 6/21/05. Inmate John R. Wilson attests that he was seen on 12/6/04 on a priority medical pass at 12:40 p.m., observed three dentists but no other inmates than himself in the clinic, i.e., at midday, evidently had a tooth pulled painlessly and told the dentist he had waited for over a year for treatment, whereupon he was informed that that was the way the dental clinic worked (at CSP-Solano).  Exh. 10 to Oppl, Wilson Dec., dated as signed on 1/10/05.[26]

\\\\\

---

[26] Includes two witness signatures.

1      In an apparent effort to demonstrate the arbitrariness of how care is provided,

2  plaintiff submits a declaration from an inmate Menacho, dated as signed 5/2/06, with two

3  witnesses, that he had submitted a CDCR medical request to the medical department on

4  4/10/1996,[27] asking for dental care for a tooth that was hurting and making it hard for him to eat

5  and was escorted for dental treatment on 4/14/06, four days later.  Opp., Exh. 12, Menacho Dec.

6  Inmate Menacho also includes a copy of his medical request form[28] dated 4/10/06 and a copy of

7  his 4/14/06 priority pass for dental reasons.  Opp., Exhs. 13 & 14.  In a declaration, without

8  copies of medical records, unauthenticated or otherwise, inmate Mark Slamen stated that during a

9  March 24, 2004 initial examination, he was told by the dentist that he had three cavities, a broken

10  tooth and a chipped tooth, after which inmate Slamen states that he told the dentist he was in pain

11  and wanted his teeth fixed at that time; the dentist refused to do so then, stating that the inmate

12  would have to schedule his own appointment for treatment which would take seven or eight

13  months.  Opp., Exh. 8, Slamen Dec., dated as signed on 4/20/04.

14      Plaintiff submits the declaration of inmate Antonio Sullivan, 70 years old, with

15  heart problems and diabetes, who complains of not having received needed dental surgery until

16  October 16, 2006, even though he experienced severe pain as far back as April 15, 2006, which

17  intensified on April 17, 2006.  Opp., Exh. 20, Sullivan Dec., dated as signed 11/17/06.

18  Although Sullivan was ducated to dental several times, he was only x-rayed and, on August 24,

19  2005, chipped a lower molar to the gum but was unable to get emergency treatment.  Id.

20      Plaintiff submits declarations (some witnessed) from various inmate witnesses to

21  his own medical/dental problems, averring that plaintiff has been in extreme pain due to his tooth

22  and jaw problems; that he has been denied dental care while others got the requested care (Opp.,

23

24      [27] The year "2996" is an evident typographical error.

25      [28] Menacho's request as set forth on the form: "I have a tooth that hurts and is very
   sensitive.  It is making it hard for me to eat.  I whould [sic] like to get is fixed as soon as
26  possible[.]   Thank you"

1 Exh. 16, Theodore Willis Dec., dated as signed on 10/18/06; Opp., Exh. 18, John Card Dec.,

2 dated as signed 10/19/06; Exh. 19, David Wayne Johnson Dec., dated as signed 10/18/06).  Some

3 of the declarants state their belief, without specifying the basis for it, that plaintiff would not

4 have been denied the dental care if he had not filed appeals, or claim to have experienced delayed

5 treatment, without more.  Opp, Exh. 17, David Elmore, signed as dated 10/19/06; Exhs. 16, 19

6 above.  As noted previously, in an effort to demonstrate that he has on-going untreated dental

7 problems, plaintiff submits an unauthenticated copy of an April 7, 2005, medical request form,

8 stating "teeth hurt - still, I've been trying to get care for over a year and a half - top - left - side

9 rear molar is most painful[.]"  Exh. 31 to Opp.

10          Although defendants argue that no evidence establishes that defendants Cheung or

11 McIntyre even knew plaintiff's name was on a dental treatment wait list before his appointment

12 of February 3, 2004,[29] this argument succeeds only with respect to defendant Cheung, against

13 whom plaintiff does not raise a genuine issue of material fact as to whether this defendant was

14 involved in any delay in treatment or to inadequate treatment of plaintiff.  Although there is some

15 dispute as to whether the dental clinic had been contacted on January 6 or 7, 2004, by an Officer

16 Walker seeking emergency dental treatment for plaintiff at plaintiff's behest, no party disputes

17 that Walker contacted the clinic on February 3, 2004, and that plaintiff thereafter, that same day,

18 was triaged by defendant Cheung, and scheduled him for a follow-up appointment on February 6,

19 2004.  At the follow-up appointment three days later, defendant Cheung examined plaintiff,

20 smoothed out the sharp edge on his tooth, and referred plaintiff to an oral surgeon to determine

21 the source of the jaw pain, after which plaintiff was evaluated by Dr. Jennings, an oral surgeon,

22 on February 17, 2004.  To the extent that plaintiff alleges that defendant Cheung denied him a

23 one-tooth partial bridge, defendants are correct that this amounts to a mere difference of opinion

24 as to appropriate treatment and such differences concerning the appropriate treatment cannot be

25

26 [29] Defendants actually gave the date as February 3, 2003, in that portion of the MSJ, an
obvious typographical error.

the basis of an Eighth Amendment violation.  Jackson v. McIntosh, supra, 90 F.3d 330; Franklin v. Oregon, supra, 662 F.2d at 1344.  In order to raise a genuine issue of material fact as to whether or not a policy applied to him, denying him the posterior one-tooth partial bridge, could amount to an Eighth Amendment violation against him, plaintiff would have to provide expert medical evidence in support of such a conclusion, which plaintiff has failed to do.  Hutchinson v. United States, supra, 838 F.2d 390.  As previously noted, the dispositive question on this summary judgment motion is ultimately not what was the most appropriate course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence, criminally reckless.  As to defendant Cheung, defendants' motion for summary judgment should be granted.

With respect to defendant McIntrye, however, in his position as Chief Dentist, plaintiff's evidence of multiple unanswered requests for dental care and his appeals as to the long delay in treatment to which he was subjected does raise a genuine issue of material fact as to whether this defendant's actions or inactions constituted a violation of plaintiff's Eighth Amendment rights and the motion, as to McIntrye, should be denied.  As the record stands now, an issue of fact remains pertinent to the issue of whether the Chief Dental Officer knew that the regulations concerning scheduling of patients was being missed so grossly, and the lack of any triage of requests so apparent, that deliberate indifference can be inferred in plaintiff's case.

However, the court cannot find a *material* issue of fact that defendant Cervantes (processor of administrative appeals) acted deliberately indifferently towards plaintiff or was a moving force behind the delay in care alleged by plaintiff.  Cervantes first contact with plaintiff came over four months after his request for dental treatment.  Although there is a bit of "*Catch 22* ishness" to the "try this, now try that," the record stands unrebutted that even plaintiff could not tell Cervantes, after four months of delay, that his matter was an urgent one.  Moreover, whatever delay in the processing of administrative appeals, within approximately one month another official "partially granted" plaintiff's appeal, and Cervantes was essentially out of the

1    picture.

2            As to defendant Traquina, who, defendants argue, only became aware of

3    plaintiff's need for dental treatment and the delays to which he had been subjected (as they argue

4    with regard to defendant Cervantes) through the inmate appeal process, and who is not

5    responsible for the wait list protocol for urgent or non-urgent appointments because that is set by

6    Title 15 of the California Code of Regulations (MSJ, p. 8), plaintiff does, nevertheless, raise

7    genuine issues of fact that this defendant, as Chief Medical Officer, has responsibility for the

8    overall medical care waiting procedures and policies, i.e., plaintiff's Exh. 8 to the second

9    amended complaint, a December 10, 2003, memorandum, by defendant CMO Traquina, setting

10   forth the waiting periods for medical appointments, including the dental clinic.  However, as to

11   any alleged individual liability for the delay plaintiff experienced, it is undisputed that on April 8,

12   2004, defendant Traquina responded to plaintiff's appeal (Log # 04-00040), granting it and

13   noting that plaintiff had been seen by Dr. Jennings on February 6, 2004, and that Dr. Jennings

14   had chosen a specific method of treatment (jaw exercises).  Defendant Traquina asked that

15   plaintiff follow the jaw exercises and wait until his followup appointment with Dr. Jennings so

16   that the next evaluation would permit Dr. Jennings to adequately address plaintiff's health

17   concerns.  Defendant Traquina is entitled to summary judgment in his individual capacity, but

18   should be denied summary judgment in his official capacity on plaintiff's Eighth Amendment

19   claims.

20        *Retaliation*

21            Retaliation by prison officials for the exercise of a prisoner's constitutional right

22   of access to the courts violates the federal constitution.  Pratt v. Rowland, 65 F.3d 802, 807 (9th

23   Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Black v. Lane, 22 F.3d

24   1395, 1402 (7th Cir. 1994); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995); Rizzo v.

25   Dawson, 778 F.2d 527, 532 (9th Cir. 1985).  The Ninth Circuit treats the right to file a prison

26   grievance as a constitutionally protected First Amendment right.  Hines v. Gomez, 108 F.3d 265

35

1   (9th Cir. 1997); see also Hines v. Gomez, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the

2   right to utilize a prison grievance procedure is a constitutionally protected right, cited with

3   approval in Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995)); Graham v. Henderson, 89 F.3d

4   75 (2nd Cir. 1996) (retaliation for pursing a grievance violates the right to petition government

5   for redress of grievances as guaranteed by the First and Fourteenth Amendments); Jones v.

6   Coughlin, 45 F.3d 677, 679-80 (2nd Cir. 1995) (right not to be subjected to false misconduct

7   charges as retaliation for filing prison grievance); Sprouse v. Babcock, 870 F.2d 450, 452 (8th

8   Cir. 1989) (filing disciplinary actionable if done in retaliation for filing inmate grievances);

9   Franco v. Kelly, 854 F.2d 584, 589 (2nd Cir. 1988) ("Intentional obstruction of a prisoner's right

10  to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to

11  remedy" (alterations and citation omitted)); Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988) (false

12  disciplinary filed in retaliation for complaint about food actionable).

13          In order to state a retaliation claim, a plaintiff must plead facts which suggest that

14  retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor

15  behind the defendant's conduct.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th

16  Cir. 1989).  The plaintiff must also plead facts which suggest an absence of legitimate

17  correctional goals for the conduct he contends was retaliatory.  Pratt at 806 (citing Rizzo at 532).

18  Verbal harassment alone is insufficient to state a claim.  See Oltarzewski v. Ruggiero, 830 F.2d

19  136, 139 (9th Cir. 1987).  However, even threats of bodily injury are insufficient to state a claim,

20  because a mere naked threat is not the equivalent of doing the act itself.  See Gaut v. Sunn, 810

21  F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of hypothetical retaliation will not suffice, a

22  prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's

23  constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

24          This is not to say that a vexatious grievance filer can never be punished.

25  Vexatious litigants may be the subject of court discipline, and the undersigned would find it

26  incongruous that while the courts can punish vexatious filings, prison officials may not.  Indeed,

36

1  the right to petition for grievances is not absolutely protected; such a right has no greater

2  protection than speech in general.  <u>Rendish v. City of Tacoma</u>, 123 F.3d 1216 (9th Cir. 1997).  In

3  the prison context, one's free speech rights are more constricted from what they would be on the

4  outside.  <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 107 S. Ct. 2400 (1987).  Again, plaintiff

5  must show that the actions or omissions constituting the "retaliation" served no legitimate

6  penological goal.

7       *Negligence*

8           As to plaintiff's supplemental state law claims of negligence, although plaintiff

9  also complains in the Board of Control claim that he has not been seen by a dentist for a year, he

10  dates the incident of which he complains as occurring on July 22, 2003, and defendants are

11  correct that these claims are timely brought[30] as to defendants McIntyre and Traquina on the basis

12  that neither of them assisted him in receiving dental care from July 2003, until November, 2003.

13  MSJ, p. 11, citing <u>Munoz v. State of California</u>, 33 Cal. App.4th 1767, 1775 (1995), which

14  states, inter alia, that "[t]he Tort Claims Act requires that any civil complaint for money or

15  damages first be presented to and rejected by the pertinent public entity" and that a "claim

16  relating to a cause of action ... for injury to person...be presented not later than six months after

17  the accrual of the cause of action."  As this court has found that plaintiff should be allowed to

18  proceed on an Eighth Amendment claim of deliberate indifference to plaintiff's serious medical

19  (dental) needs as to defendant McIntyre, this court cannot recommend judgment be entered for

20  this defendant on the state law supplemental claim of negligence, which sets a lower hurdle for

21  plaintiff than does a showing on a claim of deliberate indifference.  As to defendant Traquina,

22  however, whom this court recommends be maintained as a defendant in his official capacity only,

23  the court does not find that a genuine issue of material fact has been raised that any action or

24  inaction by Traquina caused his delay in receiving treatment.  <u>Bromme v. Pavitt</u>, 5 Cal. App.4th

25

26         [30] Plaintiff filed the claims, as noted earlier, on November 24, 2003.  SAC, p. 4, Exhibit 5.

1487, 1498, 7 Cal. Rptr.2d 608, 614 (1992) ("The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony.  Mere possibility alone is insufficient to establish a prima facie case.")

Accordingly, IT IS ORDERED that plaintiff's August 31, 2006, motion for sanctions is denied without prejudice.

IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment, filed on January 17, 2007, be granted in part and denied in part, as follows:

a.  Granted as to all defendants on plaintiff's claims of First Amendment violations (retaliation or denial of right of court access);

b.  Granted as to defendant Cheung and Cervantes, in both their individual and official capacities, and as to defendant Traquina, in his individual capacity only, as to plaintiff's claim of violations of his Eighth Amendment rights;

c.  Granted as to defendant Traquina on any supplemental state law negligence claim;

d.  Denied as to plaintiff's Eighth Amendment claims of inadequate medical (dental) care and on plaintiff's supplemental state law negligence claim as to defendant McIntyre;

2.  This matter proceed against defendants Carey and Traquina (in their official capacities only), and against defendant McIntyre on plaintiff's Eighth Amendment claims regarding his dental care, and against defendant McIntyre on plaintiff's supplemental state law negligence claims.

\\\\\
\\\\\
\\\\\
\\\\\

1        These findings and recommendations are submitted to the United States District

2   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3   days after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties.  Such a document should be captioned

5   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6   shall be served and filed within ten days after service of the objections.  The parties are advised

7   that failure to file objections within the specified time may waive the right to appeal the District

8   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9   DATED: 7/13/07

10                                          /s/ Gregory G. Hollows

11                                          _____
                                            GREGORY G. HOLLOWS
                                            UNITED STATES MAGISTRATE JUDGE

12   GGH:009
     broo1254.ofr

13

14

15

16

17

18

19

20

21

22

23

24

25

26