IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD DWAYNE BROOK,

        Plaintiff,                No. CIV S-04-1254 GGH P

     vs.

TOM L. CAREY, Warden, et al.,

        Defendants.      <u>ORDER</u>

_____/

*Facts*

        On June 20, 2008, the jury returned a defense verdict in the damages action plaintiff had maintained against Defendant McIntyre (Chief Dental Officer at CSP Solano). There is no need to set forth the facts relating to that case. Suffice it to say here that allegations in the McIntyre case mirrored those against official capacity defendants Carey (former warden at CSP Solano) and Traquina (Chief Medical Officer at CSP Solano). This order involves plaintiff's claims against these two defendants in their official capacity for injunctive relief, and Dr. McIntyre as well to the extent she was sued in her official capacity.

        Because the ultimate conclusion of law, mootness vis-a-vis injunctive relief, dismisses the defendants in their official capacity, the undersigned will not exhaustively detail all predicate and ultimate facts at issue in this case. There is simply no point to such detail. The

1  undersigned will generally relate the facts, and specifically detail the facts concerning mootness.

2        Pared to its essence, and despite the number of plaintiff's allegations, the issue in

3  this case centered about a delay in treatment of plaintiff's dental needs (a TMJ problem) at CSP

4  Solano, commencing in the summer of 2003 and terminating in February of 2004.  When he first

5  requested dental treatment for his TMJ problem, plaintiff was placed on a chronological waiting

6  list, which meant that one could wait six months or more before being seen by a dentist.  When

7  plaintiff began to complain more vociferously about this lack of treatment, he was told he would

8  remain on the waiting list unless his case was a dental "emergency."  Plaintiff, quite correctly,

9  did not know how to diagnose his problem, and although an emergency might be evident to the

10  person suffering from it, other serious dental conditions would be indecipherable to the layperson

11  in terms of their being routine, urgent, or an emergency.  Plaintiff could only tell the dental

12  department that his dental problems were causing severe pain.  When plaintiff's patience with the

13  system expired in early 2004, he enlisted the assistance of a correctional officer to acquire a

14  dental appointment.  He asked this officer to communicate plaintiff's threat "to sue them" if the

15  dental department did not see him ASAP.  Prior to that time, he had attempted, without success,

16  to file administrative appeals.  These appeals, although ongoing, were unhelpful in bringing

17  attention to plaintiff's dental problem, i.e., he was not seen in the dental clinic as a result of the

18  appeal process.

19        Plaintiff's efforts with the correctional officer finally paid off, and, having waited

20  approximately 6-7 months, he was first seen by a Dr. Cheung, who aside from filing a sharp

21  tooth, referred plaintiff to an oral surgeon for his TMJ.  The oral surgeon advised plaintiff about

22  exercises which would alleviate the TMJ problems.  Soon after this encounter with the oral

23  surgeon, Dr. McIntyre reviewed an appeal filed by plaintiff asking to be seen by dental personnel

24  (the appeal process had been filed prior to the time he was seen by Dr. Cheung).  Dr. McIntyre

25  concluded in February 2004 that the matter had been resolved since plaintiff had been seen by the

26  oral surgeon.

1   Plaintiff was unclear about the result of his visit with the oral surgeon.  Almost

2   bitterly, plaintiff testified that he was never prescribed pain medication for his TMJ problem.

3   Either because of the prescribed exercises, or the passage of time, or both, plaintiff's TMJ

4   problem eventually resolved.  Plaintiff attempted to raise other problems to show maltreatment

5   after he was finally seen, e.g., a raised molar affecting his bite and a refusal to give a partial

6   bridge; however, there was simply no evidence, especially expert evidence, which demonstrated

7   that plaintiff's treatment was below the standard of care, much less deliberately indifferent.

8   With respect to the delay in plaintiff's dental treatment, defendants conceded that

9   the wait time was unacceptably long.  Defendants testified to the logistical and budget problems

10  with respect to dental care being encountered by CSP Solano.  These problems ranged from

11  general overcrowding, to construction issues specific to CSP Solano, to budget problems CDCR-

12  wide (California Department of Corrections and Rehabilitation, formerly the Department of

13  Corrections) .  The court does find from the evidence that all three defendants, in general,

14  recognized the unacceptable state of affairs for dental treatment, both pre-plaintiff's problems

15  and afterwards, and took what action they could to rectify the logistical concerns.  The

16  undersigned finds deficient, however, the "paper triage" used by the dental department at CSP

17  Solano at the time of plaintiff's problems – there was not much of a triage at all.[1]  It is not

18  apparent that the triage itself was completely a victim of the logistics/poor budget outlook at the

19  time as opposed to lack of effort to reformulate an appointment policy; however, the lack of

20  treatment slots/deficient facilities may well have contributed to it.

21  \\\\\

22

_____

23  [1] By paper triage, the undersigned means that the first line of assessing the seriousness of an inmate's potential dental problems had to be gleaned from the description of the problem set

24  to paper by the requesting inmate.  With the exception of inmate declared emergencies, it was the wait list or nothing.  While certain dental problems might not be exacerbated by such a wait as

25  was encountered by plaintiff, other problems could grow in severity and or pain.  Again, a system whereby the inmate must self-diagnose the seriousness of his dental problems before being seen

26  is not a system which is going to function adequately.

1    Nevertheless CDCR-wide events overtook plaintiff's specific problem with the

2 long waiting list.  Both sides referenced at length the dental class action lawsuit, Perez v. Tilton

3 (now Cate), No. C-05-05241 JSW (N.D. Cal.), which appeared to be an offshoot of the more

4 general medical care class action, Plata v. Schwarzenegger, No. C-01-1351TEH  (N.D. Cal.).  Dr.

5 McIntyre testified to the entirely revised paper triage for dental requests, and the world of

6 difference in waiting times (at least on paper) brought about by the class action settlement in

7 Perez.  Although not introduced as an exhibit, the undersigned utilized PACER to acquire a copy

8 of the procedures, very lengthy, detailed procedures, which would apply to dental treatment

9 CDCR-wide.  The undersigned takes judicial notice of those procedures.  See Exhibit A to

10 docket document 219-2 in the above referenced Perez case.

11    The Perez procedures themselves constitute a sea change in dental practice within

12 the California prisons.  Although there were certainly written regulations, procedures and the like

13 applicable to dental treatment in the past, the gist of the testimony demonstrates that the

14 appointment procedures in practice were deficient prior to the Perez procedures.  But see

15 footnote 2 below relating that specific regulations regarding appointment procedures in 2003-

16 2004 were not presented.  The undersigned made wry comments to the parties outside the

17 presence of the jury, only half tongue in cheek, to the effect that the dental programs available to

18 federal employees through health insurance did not seem near the depth and quality of that now

19 available to prison inmates.  In short, there is simply no issue herein concerning the inadequacy

20 of present dental appointment procedures available to inmates.

21    Specifically, with respect to the issue herein of expeditious paper triage of

22 requests and time periods in which dental problems are examined by trained personnel, Chapter 5

23 of the Perez procedures details the requirements now imposed on CDCR, including the

24 defendants in this case.  These procedures were testified to by Dr. McIntyre.  Aside from

25 mandatory screening examinations required without request, and which are not at issue in this

26 case:

4

1   The dentist, or designee, shall record each request for dental services via a CDCR
2   form 7362....A CDCR dentist shall review, initial, date and indicate the dental
    priority classification on each CDCR Form 7362, within one day, with the
3   exception of weekends and holidays, of the dental clinic receipt of CDCR Form
    7362.  The dentist, or designee, upon completing the review, shall schedule a
4   dental triage based on the urgency of the request.  Inmate-patients who indicate
    Priority 1 dental needs shall be seen for dental triage within 72 hours, excluding
5   weekends and holidays, of the dental clinic staff receiving the CDCR Form 7362.
    All other inmate-patients shall be seen for a dental triage within ten days, with the
6   exception of weekends and holidays, after the receipt of the CDCR Form 7362 in
    the dental clinic.

7   August 7, 2007, Dental Policies and Procedures (Exhibit A referenced above) at Chapter 5.3, III

8   A 3.

9           The procedures go on to detail procedures in case the first triage has to be

10  canceled, a requirement to ask the inmate patient if he/she desires a subsequent appointment,

11  reporting requirements if an inmate declines treatment, interpreter requirements, and much more.

12  The definitions of the examination priorities are spelled out in Chapter 5.4.

13  *Discussion*

14          The two claims set forth in the pretrial order, and the claims on which the jury was

15  instructed, were an Eighth Amendment deliberate indifference claim and a general, state law

16  negligence claim.[2]  No injunctive relief can be issued for violations of state law, Pennhurst State

17  School and Hosp. v. Halderman, 465 U.S. 89, 104 S,Ct. 900 (1984), so only the Eighth

18  Amendment claim is at issue against the defendants in their official capacity.

19

20          [2] Plaintiff referenced a negligence per se claim in his pretrial statement and despite the
    lack of inclusion of such a theory in the pretrial order, submitted a proposed jury instruction.
21  However, as related to plaintiff at trial, he never proposed a statute or regulation with a *specific*
    mandatory duty governing defendant's conduct.  Under California law, when one sues public
22  officials or a public entity on a theory of negligence per se, the governing statute is Cal. Govt.
    Code § 815.6 (breach of a mandatory duty).  O'Toole v. Superior Court, 140 Cal. App. 4th 488,
23  44 Cal. Rptr. 3d 531, 548 (n.12) (2006).  However, while invoking § 815.6, a plaintiff must link
    it with the violation of a specific statute or regulation which not only applies specifically to the
24  issues at bar, but also provides implementing guidelines.  Id. at 548.  Plaintiff provided no such
    statute, regulations or guidelines applicable to the time period in question.  Plaintiff only
25  referenced general do-no-harm-to-inmates statutes and regulations.  Nothing presented by
    plaintiff by way of exhibit or reference supplied implementing guidelines which had been
26  breached.  The undersigned did not find any viable negligence per se theory presented in pretrial
    proceedings or at trial.

5

1        However, a requirement of injunctive relief is that the court has some effective

2  relief it could order.  Cantrell v. City of Long Beach, 241 F.3d 674, 678 (9th Cir. 2001); Am.

3  Rivers v. Nat'l. Marine Fisheries, 126 F.3d 1118, 1124 (9th Cir. 1997).  If these defendants are

4  already bound by procedures developed after the issues arose in this case, and those procedures

5  fully encompass any relief this court could order, the injunctive relief case is moot.  See e.g.,

6  Pierce v. County of Orange, 526 F.3d 1190, 1206, 1207 (9th Cir. 2008).  As set forth above,

7  defendants testified that the Perez procedures are binding on them.  The class action settlement is

8  obviously binding in any event as plaintiff is a member of the Perez class action.  These

9  procedures encompass plaintiff's delayed treatment issue herein, and address it as fully, even

10 more so, than could this court.  Therefore, the undersigned need not make a final assessment of

11 whether plaintiff has proven a set of facts which would warrant injunctive relief under the Eighth

12 Amendment; even if he did, the case is moot and does not warrant injunctive relief.

13       The official capacity claims against all defendants are therefore dismissed.

14 *Conclusion*

15       Judgment is entered in favor of Defendant McIntyre in her individual capacity as

16 per the jury verdict.  All official capacity claims against defendants Carey, Traquina and

17 McIntyre are dismissed as moot.  Final judgment is entered accordingly.

18 DATED: 06/26/08

                                        /s/ Gregory G. Hollows

19                                _____

20 GGH:gh:035                          UNITED STATES MAGISTRATE JUDGE
   broo1254.ff

21

22

23

24

25

26

6