IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD DWANE BROOK,

      Plaintiff,                      No. CIV S-04-1254 GGH P

   vs.

TOM L. CAREY, Warden, et al.,

      Defendants.           ORDER,

_____/

*Introduction and Summary*

      Plaintiff timely filed a motion for new trial under Fed. R. Civ. P. 59 raising four issues. An opposition was requested and timely filed. For the reasons stated herein, the motion is denied with respect to Issues 1, 2 and 4; it is deferred with respect to Issue 3.

*Discussion*

    Issue 1– Alleged Ex Parte Discussion By The Undersigned With Defendants'
    Counsel Regarding Jury Instructions

      The undersigned is at somewhat of a disadvantage in addressing plaintiff's assertion as the date he gives for the alleged ex parte discussion with defendant's counsel, June 12, 2008, is a date on which the Brook v, Carey, et al. trial was not in session, had not started, and the court's calendar indicates that nothing about Brook v. Carey was undertaken in court.

1

In any event, the Brook v. Carey trial commenced on June 16, 2008, and that was the first date plaintiff appeared physically in the undersigned's court.[1]

In every civil rights trial at which the undersigned has presided, it is the undersigned's practice to synthesize the jury instructions submitted by the parties into a court produced version, which at some point in the trial, the undersigned disseminates to the parties for review and comment.  Invariably, the court explains to the parties the logistics of what is being given to them, i.e., that the court has synthesized or narrowed the proposed instructions to the ones pertinent to the claims and evidence at trial.  At no time has the undersigned discussed the substance of jury instructions without all parties to the trial being present through counsel and/or with parties representing themselves.  The undersigned engaged in no such substantive ex parte discussion with defense counsel in this case – on or off the record.

It is possible at times that counsel/pro se parties may be handed the draft jury instructions at a time when the court is not on the record.  It is also possible that the undersigned might explain to the person who has just been given the instruction packet that the instructions previously submitted have been narrowed, streamlined or synthesized, and that the party will have an opportunity to comment or object on the record.  However, that is all that would be said off the record.

Given that plaintiff has not pinpointed any time of day, or even the correct date, of the asserted discussion, the undersigned cannot go to a specific part of the tape recorded record to review plaintiff's assertion.  However, the undersigned has gone to likely parts of that record to determine what may have been said about jury instructions.  On June 17, 2008 at approximately 4:34 p.m., the undersigned referred to hearing the parties' comments and objections to the jury instructions at 11:00 a.m. the next day.  There is no way of telling whether the undersigned had distributed a copy of the proposed instructions at that time, or whether that was to be done the

---

[1] Plaintiff had appeared before the undersigned on one prior occasion in a video conference appearance.

next day. The undersigned does not recollect precisely when he may have distributed them, nor do the portions of the record listened to by the undesigned indicate that fact.[2] The record commences at 11:09 a.m. on the 18th of June with a discussion about the jury instructions, and by that time, it is evident that the parties had received the instructions. In his partial review, the undersigned found no place in the record where it appeared that a substantive discussion with defense counsel had been continued to an on-the-record discussion. Plaintiff never made any comment about any alleged ex parte discussion at any time during this June 18th discussion or elsewhere. Plaintiff's self-serving comment that he "didn't know how to object" is belied by the numerous times during the trial when he made his objections or thoughts known to the court and argued them with force. Moreover, after given time for review of the instructions, and after hearing plaintiff's discussion of points pertinent to the instructions, plaintiff stated twice that he had no objections to the instructions. June 18, 11:28 a.m. and 11:30 a.m.[3]

Finally, plaintiff's assertion is completely discounted by the fact that the court made no changes to the packet of jury instructions after argument on those instructions except to add *sua sponte* an addition to the instructions on supervisorial liability which favored plaintiff.

Again, the undersigned engaged in no substantive discussion about the instructions during this trial except at times when both counsel and plaintiff were present.[4]

---

[2] The undersigned has listened to the record right after breaks had been taken on several occasions, the start of court in the morning or after lunch, logical times at which to have distributed instructions, but cannot determine from that review the time at which the instructions were distributed.

[3] Plaintiff's assertion that he was somehow not able to argue for certain jury instructions because of the alleged ex parte discussion is a non-sequitur. It is also completely belied by the record in which the undersigned gave plaintiff multiple opportunities to review the instructions and at least two chances to advocate for changes or additions to the instructions.

[4] There were a couple of times during the trial when plaintiff was brought to the courtroom late because of custodial logistics. Indeed, that may be the reason why the scheduled 11:00 a.m. jury instruction session did not commence until 11:09 a.m. The undersigned has no reason to doubt that he may have engaged in a non-substantive, off-the-record banter with those present in court at that time while awaiting plaintiff. However, the undersigned knows better than to discuss the substance of the case at such times, whether about jury instructions, witnesses,

Plaintiff's motion for new trial on this ground is denied.

<u>Issue 2 – Alleged Severe Limitations Placed on Plaintiff's Case</u>

Plaintiff does not relate specific examples of his alleged restrictions. The undersigned has reviewed portions of the taped record and his memory, and finds no unwarranted limitations placed on plaintiff's ability to set forth *his* case. Plaintiff was cautioned that he would not be able to bring evidence of incidents occurring to other persons on other occasions relating to dental care unless these incidents were sufficiently similar to plaintiff's claims herein to warrant the time which would be required to fully explore such incidents. Plaintiff could not demonstrate the necessary similarity. In addition, when plaintiff began to wander in his testimony, and repeat what he had said before, and generally indicated an inability to know when to stop testifying or to know when to stop questioning, the court finally imposed time limits on plaintiff's testimony/questioning. Such limits were warranted.

Finally, the court had previously ruled that it would not require Solano prison authorities to make plaintiff's witnesses available to him before trial for consultation purposes. Not only did the court lack authority to do so, but the testimony of plaintiff's witnesses were not hindered in the least by an alleged lack of consultation. Indeed, the fact that the inmate witnesses appeared uncoached removed much impeachment opportunity by defense counsel.

<u>Issue 3 – Not Holding a Hearing Within the Trial Regarding Alleged Non-production of Records</u>

In the closing minutes of the evidentiary portion of the trial, plaintiff asked for a hearing or investigation concerning allegedly non-produced documents regarding his testified to requests of custodial officials to contact dental personnel to set up an appointment. Plaintiff

---

exhibits, etc., and it never happened. If the jury instruction packet had been handed to defense counsel while awaiting plaintiff's presence, it is possible that logistical comments were made about what was then being handed to defense counsel, i.e., that the court had prepared a synthesized or narrowed set of instructions. This is not likely in that plaintiff indicated on the record shortly after 11:09 that he had reviewed a portion of his packet at that time. It is more likely that the jury instruction packet had been delivered the day before.

believed that the evidence showed that Dr. McIntyre had such unproduced records at trial. The only such recordation came after a frustrated plaintiff had told a custodial staff member that he would sue if he were not seen by dental personnel. According to evidence at trial, all such requests by custodial staff were to be logged. There was an indication that perhaps some log records had not been disclosed to plaintiff with respect to pertinent custodial contacts despite discovery requests for same.

The undersigned had no desire or effective ability to halt the trial at that late time to get to the bottom of what appeared to be a discovery violation, if at all. If the trial had been halted, the jury would have had to have been excused for a lengthy period. There was insufficient evidence before the undersigned at the time to mistry the case. The court told plaintiff if he wished the matter reviewed to file a motion for new trial.

Defendants respond to plaintiff's motion for new trial with technical objections. First, defendants submit that since the operative requests were directed to Dr. Traquina (Chief Medical Officer) and not Dr. McIntyre (Chief Dental Officer subordinate to the CMO), no production was necessary. Clearly, the requested records were in the constructive possession of the CMO. The boilerplate objection of "equally available to plaintiff" is not colorable as there has been no reason presented to show that an inmate will have access to official logs in the dental office.

Therefore, defendants shall produce to the court, no later than August 13, 2008 any and all logs, or documents with the same function, pertinent to any request made by a custodial employee regarding plaintiff's desire to see dental personnel.[5] The time period covered by this request is from May 2003 through and including February 2004. It may well be, as defendants' counsel predicts, that there will be an absence of such a record, except for the "final"

---

[5] The logs shall be produced in unredacted form with any requests pertinent to plaintiff highlighted. Any use of the records by the undersigned will take into account medical privacy concerns.

request made by a custodial official after plaintiff threatened to "sue them."  If that is so, plaintiff made his case about the lack of record keeping, and the jury assessed plaintiff's testimony in arriving at its verdict.  However, if there are indeed records of such custodial officer's requests, unanswered requests, the court will need to reassess the situation as the existence of such records would tend to confirm the lack of adequate appointment procedures during the pertinent time – a fact that plaintiff would have been entitled to demonstrate to the jury.  More to the point, the existence of such records might tend to implicate supervisors who permitted such laxity in the appointment procedures.

Issue 4 – Denials of Requests for Counsel

Plaintiff's requests for counsel were denied because he did not show the required extraordinary circumstances indicating the need to press volunteer counsel into service.  Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); see also Mallard v. United States Dist. Court, 490 U.S. 296 (1989).  Not only was the unsophisticated subject of delayed treatment one which could be presented by a layperson, plaintiff was able to present it very well (despite his sometimes "protestations too much" that he was not a lawyer and did not know how to do certain things).  The undersigned complimented plaintiff on the record for his preparation and presentation.

*Conclusion*

Plaintiff's motion for new trial, filed July 1, 2008, is denied with respect to Issues 1, 2 and 4.  Resolution of Issue 3 is deferred pending production of the required documents to the court as set forth in the text of this order.

DATED: 07/28/08                    /s/ Gregory G. Hollows

                                   GREGORY G. HOLLOWS
                                   UNITED STATES MAGISTRATE JUDGE

GGH:009
broo1254.newtr